# UNITED STATES OF INTERNATIONAL TRADE

| | |
|---|---|
| BRANDON CHEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 24-00208 |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION ) | |
| ) | |
| Defendants, ) | |
| ) | |
| _____ ) | |

## COMPLAINT

1. Brandon Chen, Plaintiff, files this timely complaint to appeal his score for the April 2022 Customs Broker License Examination.

2. While it is not the official agency record, Plaintiff compiled and attaches the documents that are, to the best of his knowledge, the complete agency record. *See Exhibit A.*

3. On March 3, 2023, U.S. Customs and Border Protection (CBP) issued its first decision on Plaintiff's two administrative appeals of his exam score. Plaintiff achieved a score of 66.25 percent at this level. *Id.* On October 3, 2024, CBP issued its second and final decision on Plaintiff's appeal. *Id.* Plaintiff achieved a score of 72.50 percent. Plaintiff now appeals CBP's denial of a passing score for Plaintiff. *Id.*

4. A score of 75 percent is required to achieve a passing score.

5. Plaintiff is only two correct answers away from achieving a passing score.

6.   CBP did not grant credit to Plaintiff on eleven exam questions: 14, 29, 36, 38, 39, 42, 44, 46, 54, 63, and 78. *Id*.

7.   Plaintiff now appeals CBP's decision and respectfully requests, upon review of the administrative record and Plaintiff's arguments, that this court grant credit to Plaintiff on these eleven questions in sufficient number for Plaintiff to achieve a passing score.

8.   The Court of International Trade has jurisdiction over this action pursuant to 28 U.S.C. § 1581(g)(1) and 19 U.S.C. § 1641(e)(1).

9.   Pursuant to Rule 56.1 of the U.S. Court of International Trade, Plaintiff requests judgment on the agency record. Plaintiff requests that this court order Defendant to produce the official copy of the administrative record. This action can be decided solely by the parties' briefs and legal arguments. Discovery is not needed.

## Question 14

Exam Question 14 asserts that "a monetary penalty will be assessed" if there has been no entry made for the merchandise, but the owner, operator of an imported vehicle or agent fails to notify CBP no later than 20 calendar days after landing. Exam Question 14 is premised on the existence of a mandatory penalty. However, 19 CFR §123.10(a), the regulation that CBP invokes, reads, "Failure to provide such notification **_may_** result in assessment of a monetary penalty of up to $1,000 per bill of lading against the owner or operator of the vehicle or the agent thereof." (emphasis added). Thus, CBP is wrong in basing its official answer to Exam Question 14 on 19 CFR §123.10 because that regulation is discretionary and CBP's wording in Exam Question 14 does not permit any discretion, i.e., the monetary penalty will be assessed. A flaw in the premise of an exam question disqualifies the exam question and the exam-taker must be credited with the correct answer. People sitting for the customs broker exam must pick the single

correct answer. They get no credit for nearly getting the correct answer. Just as the exam-taker must be perfect, the exam-writer must be perfect. If the premise in a question or answer is flawed, its conclusion cannot stand. The multiple-choice format is brutal and unforgiving both for exam-takers and CBP. An exam-taker should not be required to guess what CBP intended in a question or give CBP the benefit of the doubt. If Plaintiff was forced to guess what Exam Question 14 is actually asking, it would be "what is the maximum mandatory penalty that CBP may impose?" The problem is that there is no mandatory penalty under 19 CFR §123.10(a). CBP's official answer of A cannot be correct. If CBP's official answer is wrong, then the entire exam question is flawed and Plaintiff's answer cannot be counted against him. This Court should give Plaintiff full credit for Exam Question 14.

## **Question 29**

Exam Question 29 asks for the type of entry that is required for goods brought into the customs territory of the United States by the National Aeronautics and Space Administration (NASA) from space or from a foreign country as part of an international program of NASA. The official answer from CBP is E: Entry is not required. Plaintiff answered A: 01 - Formal Entry.

As he is permitted to do, Plaintiff ultimately relied upon common knowledge because Exam Question 29 was ambiguous at best. Plaintiff remembered seeing and reading about the following document:

**GENERAL DECLARATION**

(Outward/Inward)

AGRICULTURE, CUSTOMS, IMMIGRATION, AND PUBLIC HEALTH

Owner or Operator _____ NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

Marks of
Nationality and Registration _____ U.S.A. _____ Flight No. APOLLO 11 _____ Date _____ JULY 24, 1969

Departure from _____ MOON _____ Arrival at _____ HONOLULU, HAWAII, U.S.A.
(Place and Country) _____ (Place and Country)

**FLIGHT ROUTING**
("Place" Column always to list origin, every en-route stop and destination)

| PLACE | TOTAL NUMBER OF CREW | NUMBER OF PASSENGERS ON THIS STAGE | CARGO |
|---|---|---|---|
| CAPE KENNEDY | COMMANDER NEIL A. ARMSTRONG | | |
| MOON | | **Departure Place:** | MOON ROCK AND MOON DUST SAMPLES Cargo Manifests Attached |
| JULY 24, 1969 HONOLULU | COLONEL EDWIN E. ALDRIN, JR. | Embarking NIL / Through on same flight NIL | |
| | | **Arrival Place:** | |
| | | Disembarking NIL / Through on same flight NIL | |
| | LT. COLONEL MICHAEL COLLINS | | |

**Declaration of Health**

Persons on board known to be suffering from illness other than airsickness or the effects of accidents, as well as those cases of illness disembarked during the flight:

NONE

Any other condition on board which may lead to the spread of disease:

TO BE DETERMINED

Details of each disinsecting or sanitary treatment (place, date, time, method) during the flight. If no disinsecting has been carried out during the flight give details of most recent disinsecting:

Signed, if required _____ Crew Member Concerned

For official use only

HONOLULU AIRPORT
Honolulu, Hawaii
ENTERED

*Ernest I. Murai*
Customs Inspector

I declare that all statements and particulars contained in this General Declaration, and in any supplementary forms required to be presented with this General Declaration are complete, exact and true to the best of my knowledge and that all through passengers will continue/have continued on the flight.

:

That the Apollo 11 NASA crew was required to file this customs entry/declaration upon their

return from the moon is commonly known by customs brokers and by those wishing to become

customs brokers. Because history famously records this customs entry, only absolutely clear

authority to the contrary could convince an exam-taker that no entry whatsoever is required for NASA's importations from space.

The regulations and the HTSUS are unclear about whether an entry is required for NASA importations from space. To start, a duty-free entry is not the same as no entry required or no importation made. A duty-free entry assumes that there has been an importation and an entry, but with an applicable duty rate of zero. 19 CFR §10.102(a) provides duty-free entry for the following HTSUS items:

> 9808.00.10, 9808.00.20, 9808.00.30, 9808.00.40, 9808.00.50, 9808.00.60, 9808.00.70, *__or other subheadings__* in the Harmonized Tariff Schedule of the United States (HTSUS)

(emphasis added). In other words, other subheadings under Heading 9808 also grant duty-free entry status. One such subheading is 9808.00.8000, the very subheading that CBP cites to in support of its no entry required choice in answer E. Granted, Subheading 9808.00.8000 states that no entry is required, but 19 §10.102(a) allows for that subheading to be permitted duty-free status. This clash between a regulation and an HTSUS subheading forced Plaintiff to guess at the correct answer, and faced with this ambiguity, Plaintiff knew that at least once in our nation's history, an entry was required in this kind of space importation. Plaintiff's choice is defensible and reasonable. Plaintiff thus requests that the Court give Plaintiff full credit for Exam Question 29.

## Question 36

In its *Guidelines For Writing Questions For Customs Broker License Examination*, CBP writes:

> Components of a good examination question:
> A good examination question must be both FAIR and VALID.

FAIR questions test knowledge that a broker must reasonably know to conduct Customs business.  Fairness includes:
- Topic selection (it MUST be developed and answerable from a designated exam source)
- Clarity
- ***Consideration of the time needed to read and research a question and to do any calculations (questions should be answered in an average of 3 minutes)***
  UNFAIR questions include those that are:
  Based on undesignated sources, such as a statute or reference sources not specified on the official exam notice
- Ambiguous (double negatives, etc.)
- Lacking in essential facts
- ***Too lengthy or time-consuming***

https://tinyurl.com/3zjmfwdw (emphasis added).

At 268 words and with its dozens of clauses, Exam Question 36 violates CBP's own guidelines. Plaintiff found Exam Question 36 to be an impossible slog. It was too long, too dense, too unwieldy, and too confusing to be considered a fair exam question and should be stricken and Plaintiff given credit for a correct answer.

Plaintiff does not exaggerate. Here is Exam Question 36:

A basic importation and entry bond must contain all of the following bond conditions EXCEPT:

A. If access to the customs security areas at airports is desired, the principal (including its employees, agents, and contractors) agrees to comply with the CBP regulations in 19 CFR, Chapter 1, applicable to customs security areas at airports. If the principal defaults, the obligors (principal and surety, jointly and severally) agree to pay liquidated damages of $1,000 for each default or such other amount as may be authorized by law or regulation.

B.  The principal agrees to keep safe any merchandise placed in its custody including, when approved by CBP, repack and transfer such merchandise when necessary for its safety or preservation.

C.  If merchandise is released conditionally to the principal before all required documents or other evidence is produced, the principal agrees to furnish CBP with any document or evidence as required by law or regulation, and within the time specified by law or regulations.

D.  If merchandise is released conditionally to the principal before its right to admission into the United States is determined, the principal, after notification, agrees to mark, clean, fumigate, destroy, export, or do any other thing to the merchandise in order to comply with the law and regulations governing its admission into the United States with the time period set in the notification.

E.  If the principal obtains permission to have any merchandise examined elsewhere than at a wharf or other place in charge of a CBP officer, the principal agrees to hold the merchandise at the place of examination until the merchandise is properly released.

## **Question 38**

Exam Question 38 asks for the proper classification of a book of crossword puzzles.

Plaintiff answered A, 4901.99.0093. Heading 4901 reads:

> Printed books, brochures, leaflets and similar printed matter, whether or not in single sheets:

However, CBP's official answer is D, 9503.0090. Heading 9503 reads:

> Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof...

In CBP's own words, here is how to choose between two competing HTSUS headings when classifying an item:

> When classifying merchandise, one must be aware that due to the hierarchical structure of the Harmonized System: (1) merchandise must first be classified in the Harmonized System in the 4-digit heading whose terms most specifically describe the merchandise (unless otherwise required or directed by the GRIs); and (2) only 4-digit headings are comparable (***i.e., no consideration should be given to the terms of any subheading within any 4-digit heading when considering the proper classification of merchandise at the 4-digit heading level***). EXAMPLE: An electric toothbrush could potentially be classified in heading 8509 as an electromechanical domestic appliance with self-contained motor and in heading 9603 as a brush. Within heading 9603, subheading 9603.21 provides for "toothbrushes." No consideration should be given to this

subheading when comparing the terms of the headings to determine the appropriate heading for classification of the electric toothbrush (as merchandise must first be classified in the Harmonized System at the heading level by the terms of the headings).

*What Every Member of the Trade Community Should Know About: Tariff Classification, An Informed Compliance Publication*, (U.S. Customs and Border Protection, May 2004), p. 13 (emphasis added). Thus, the task is to determine which heading, between 4901 and 9503, more specifically describes a book of crossword puzzles. If the issue can be decided at this point, consulting subheadings is not permitted. The analysis ends and the classification is decided.

One additional tool is needed to classify a book of crossword puzzles. *Ejusdem generis,* Latin for "of the same kind," is a rule of construction commonly and historically used by CBP and by the courts to classify items under the HTSUS. We are compelled to ask whether a book of crossword puzzles is of the same kind as the items under heading 4901 or 9503.

A book of crossword puzzles clearly and absolutely does not belong with the toys for little kids and babies of heading 9503:

Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof...

The language "puzzles of all kinds" in heading 9503 does not change this result. There are "puzzles of all kinds" that are still little kid toys as shown in this Google search results for "children toy puzzles":



None of these "puzzles of all kinds" are remotely similar to a book of crossword puzzles. The phrase "puzzles of all kinds" is limited to children's toys and, despite its terms, does not capture every puzzle. It does not capture mystery novels or scientific studies. "Puzzles of all kinds" does not capture any of the following books (plus one movie) even though they all have "puzzle" in their title:



.

For the same reason, Heading 9503 also does not capture a book of crossword puzzles.

Here is the first result when Plaintiff Googles "book of crossword puzzles":



This book plus the other search results would challenge most college-degreed people and do not belong with children's toys of Heading 9503. Google is not alone in associating "book of crossword puzzles" with books suited for college-educated adults. The same search on Amazon Prime produces a similar book from the same author:



It is telling that Amazon Prime categorizes or classifies "a book of crossword puzzles" under books and not under toys. This court should follow suit.

      Here Plaintiff reproduces heading 9503 in graphic form and in the same order as items are listed in heading 9503. The last item shown is the book of crossword puzzles. For CBP's answer to be correct, a book of crossword puzzles would have to be classified with these toys.



Tricycle  Scooter  Pedal Car  Doll Carriage

Dolls  Other Toys  Reduced scale models  Puzzles of all kinds

Book of Crossword Puzzles

The book of crossword puzzles obviously does not belong with the baby toys of Heading 9503. A person tidying up their home would not pick up a book of the New York Times Sunday's crossword puzzles that someone had forgotten on a coffee table and then say to themselves, "I better put this in the toy box in the baby's nursery with all the other toys."  Answer D is thus incorrect.

In contrast, Heading 4901 reads:

> Printed books, brochures, leaflets and similar printed matter, whether or not in single sheets:

Is a book of crossword puzzles a "printed book?" Yes, a book of crossword puzzles is a printed book as explicitly provided in Heading 4901. Plaintiff's answer A is a far better fit than CBP's answer D.

Plaintiff realizes that there may be CBP binding rulings that produce a different result and that agree with CBP's answer, but binding rulings are irrelevant because they were not included in the official tested materials, i.e., the Notice Of Examination. *See Exhibit A.*

CBP explains why it rejected Plaintiff's answer:

> Per a ORI 1 analysis, Appellant Chen should have reviewed Note l(c) to Chapter 49, which clearly states that "[p ]laying cards or other goods of chapter 95" are not covered by Chapter 49. As such, Appellant Chen should then have looked to the headings, chapter notes, and section notes of Chapter 95 to determine whether the book of crossword puzzles is precluded from classification under the headings of Chapter 95 and, therefore, viable for classification in a heading of Chapter 49. No such preclusion exists in the chapter or section notes and heading 9503 explicitly provides for "puzzles of all kinds." Therefore, viable classification in heading 9503 precludes classification in any heading of Chapter 49.

CBP's argument is begging the question. It is circular and conclusory. CBP assumes that a book of crossword puzzles is included in the exclusion "Playing cards or other goods of chapter 95." CBP failed to explain why or how that exclusion applied to a book of crossword puzzles.

## Question 39

Question 39 asks for the classification of a children's detangling hairbrush with plastic handle and features soft bristles on a sponge base. The brush can be used on wet or dry hair and is valued at 52 cents each. As with Question 38, the correct answer to Question 39 is determined by the HTSUS heading. Plaintiff chose answer E, 9615.11.3000. CBP's official answer is B, 9603.29.8010.

CBP provides the following justification for denying Plaintiff's answer:

> Per a GRI 1 analysis, Appellant Chen should have reviewed heading 9603, which clearly states that hairbrushes are classified in that heading. Therefore, viable classification precludes classification in heading 9615.

This "heading 9603…clearly states that hairbrushes are classified in that heading" is the only rational that CBP offers to support its preferred exam answer. The problem is that CBP does not explain where Heading 9603 supposedly makes that clear statement. Here is Heading 9603:

> Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush making; paint pads and rollers; squeegees (other than roller squeegees):

Heading 9603 contains only 39 words, all of which deal with industrial cleaning machines and tools. If a children's detangling hairbrush or anything that resembles a children's detangling hairbrush is found here (as CBP claims), then CBP should have pointed it out. Clearly CBP failed to justify its conclusion because a children's detangling hairbrush does not belong under Heading 9603. Having failed to explain its answer and its denial of Plaintiff's answer, CBP is not allowed to now supplement the administrative record and try to conjure up to new reasons to support its denial of Plaintiff's answer. Without Plaintiff having to offer any additional argument, this Court should grant Plaintiff credit for a correct answer to Question 39 because CBP failed to provide any reason for denying Plaintiff's exam answer or supporting its own exam answer.

But Plaintiff does offer a strong argument to support its answer to Exam Question 39. It is the same argument that Plaintiff offered at the administrative level: a children's detangling hairbrush belongs in Heading 9615, which reads:

> Combs, hair-slides and the like; hairpins, curling pins, curling grips, hair-curlers and the like, other than those of heading 8516, and parts thereof:

In contrast to CBP's oversight, Plaintiff explains where and why a children's detangling hairbrush fits perfectly in Heading 9615. A children's detangling hairbrush is a tool used on a person's hair, a small person, but still a person. It is very much like a comb, hair-slides and the like; hairpins, curling pins, and hair-curlers of Heading 9615. These are the tools of a hairdresser or hairstylist uses at a beauty salon or perhaps the implements that a loving parent uses on their

child. They are not the industrial machinery used to scrub floors and paint walls of Heading

9603.

## Question 42

Exam Question 42 asks for the classification of the following product:

> Best Seafood Import Company is entering a product called "Bonito del Norte" from Spain. The fish is in pieces, packaged in glass jars and is invoiced as "Bonito del Norte, White Tuna in Olive Oil." The documents provided include National Oceanic and Atmospheric Administration (NOAA) Form 370 "Fisheries Certificate of Origin", which lists "Thunnus Alalunga in Oil" under the "Description of Fish" section, and a Captain's Statement stating that no dolphins were harmed during the catch.

Plaintiff chose exam answer A. 0302.31.0000 while CBP's official exam answer is B.

1604.14.1091.

CBP offers only one sentence of explanation to deny Plaintiff's exam answer:

> The product as issue is tuna pieces in oil, and thus would be considered a "prepared fish," not "fresh or chilled," under heading 0302, HTSUS.

CBP places quotation marks around two phrases to conclude that they are mutually exclusive:

"prepared fish" and "fresh or chilled." But one of the phrases, "prepared fish," despite CBP's use

of quotation marks, is nowhere to be seen in Heading 0302.  Here is Heading 0302:

> Fish, fresh or chilled, excluding fish fillets and other fish meat of heading 0304:

The problem is that Heading 0302 does not define "prepared fish." Indeed, nowhere in the

HTSUS is "prepared fish" defined and nowhere does the HTSUS say that "prepared fish" and

"fresh or chilled" are mutually exclusive. "Prepared fish" means fish could reasonably be

understood to mean fish that is fully prepared and plated ready to serve as a meal, perhaps a TV

dinner. Likewise, cut fish in oil can be easily refrigerated and thus stored and served chilled.

Again, there is nothing in Heading 0302 or Heading 1604 to even suggest that these alternative

(from CBP's understanding) suggestions are not correct. It may be that CBP is relying on

industry definitions to justify its preferred exam answer and deny the exam answer that Plaintiff

chose. Plaintiff did not have access to seafood industry definitions as seafood industry definitions

were not listed in CBP's official Notice Of Examination. *See Exhibit A.*

### Question 44

Exam Question 44 asks for the classification of a 1,080-pixel high-definition digital

camera with an interchangeable lens and three-inch liquid crystal display (LCD) that captures

both still images and moving images? Plaintiff chose Exam Answer D. 8525.80.5050 but CBP's

official Exam Answer was B. 8525.80.4000.

CBP and Plaintiff converged on the same classification number except for the final four

digits, as seen here:

| 8525.80.40 | 00 | | Digital still image video cameras[1] |
| 8525.80.50 | | | Other:................................................ |
| | 15 | | Camcorders............................... |
| | 50 | | Other........................................ |

CBP claims that a "1,080-pixel high-definition digital camera with an interchangeable lens and

three-inch liquid crystal display (LCD) that captures both still images and moving images" is

classified under "Digital still image video cameras." Here is CBP's explanation:

The Facts dictate the article is a digital camera. As such, it is classified in subheading 8525.80, HTSUS, which provides for "digital still image video cameras." The Facts in the question indicate that the subject merchandise " ... captures both still images and moving images." The term "digital still image video camera" clearly indicates the ability to capture still images while also functioning as a video camera. Therefore, the camera is properly classified under statistical reporting number 8525.80.4000.

Appellant Brandon Chen argues the digital camera is classified under subheading 8525.80.50, HTSUS. Appellant Chen contends the term "moving images" is not found in subheading 8525.80.40, HTSUS, so it cannot be the correct answer. Furthermore, Appellant Chen contends examinees cannot be expected to know the precise technical definition of "video cameras," which is undefined in the HTSUS.

Appellant Chen incorrectly assumes the lack of the term "moving images" in subheading 8525.80.40 means the subheading could not describe an article that captures moving images. Moreover, understanding the term "digital still image video cameras" does not require "precise technical knowledge" as the common meaning of those terms, as discussed above, indicates a camera that captures both moving and still images.

CBP claims that "digital still image video cameras" is commonly understood and requires no "precise technical knowledge." CBP is wrong. "Digital still image video cameras" is a *non sequitur* to the common person.

Plaintiff could find no matches or examples online for "Digital still image video cameras" (except for CBP rulings, which are not irrelevant to the customs broker exam because rulings are not listed in CBP's official Notice of Examination. *See Exhibit A*). This is probably because calling merchandise by that label would confuse consumers. A still image is different from a video. A still image is an image that does not move while a video moves, which explains why videos are also called movies. Subheading 8525.80.4000, Exam Answer B, might have been the

correct classification if it read "Digital still image ***and*** video cameras." The conjunction "and" would mean that the digital camera records both still images and video. But Subheading 8525.80.5050 does not have that conjunction. Moreover, the capabilities of "Digital still image video camera" under Subheading 8525.80.4000 are never explained in the HTSUS, thus rendering the meaning of the subheading beyond a common understanding.

Nothing prevented CBP from using "digital still image video camera" in Exam Question 44 instead of "a digital camera that captures both still images and moving images." The two descriptions do not mean the same thing, at least not in the normal, non-expert vernacular. By not using the exact same phrasing in Exam Question 44 as is found in Subheading 8525.80.4000, that provision was automatically disqualified as a correct answer. "Because of faulty drafting, [P]laintiff's answer must be considered correct or the question must be voided." *Carrier v.United States*, 20 CIT 227, 232 (1996)(holding that the official answer could not be considered more correct than the plaintiff's response).The only remaining and possible answer was thus "other" under Subheading 8525.80.5050, Exam Answer D.

### Question 46

Exam Question 46 requests the classification of a of a thick salsa in a seven-ounce jar containing: tomato puree, jalapeño peppers, vinegar, ancho peppers, onions, cascabel peppers, garlic, salt, cottonseed oil, bay leaves, and spices. CBP claimed that the correct answer was C, 2103.20.4020 while Plaintiff answered A, 2002.90.8050.

Although Exam Question 46 does not call it Mexican salsa, the jalapeños and anchos undoubtedly make it Mexican. Save perhaps of a few unfortunate souls located somewhere in the arctic poles who have never tasted Mexican salsa, no one would ever mistake Mexican salsa for

a tomato sauce. CBP's Exam Answer C is obviously incorrect. Plaintiff made this objection and argument at the administrative level. CBP did not even acknowledge the argument. Here is the entire and only reasoning that CBP provided for its decision:

> Appellant Brandon Chen selected Answer Choice A, which is incorrect because subheading 2002.90.8050, HTSUSA, provides for "Tomatoes prepared or preserved otherwise than by vinegar or acetic acid: Other: Other." The product at issue is a tomato puree-based salsa which, in addition to other ingredients, is preserved in vinegar. The appeal for Question 46 is denied.

CBP gave no rebuttal to Plaintiff's challenge and did not defend its own answer. CBP may not now supplement the administrative record to offer a rebuttal or a defense. Thus, without Plaintiff having to prove anything further, the Court should strike Exam Question 46 and should credit Plaintiff with the correct answer. In addition, CBP is wrong in calling the product a "tomato puree-based salsa." If it has jalapeños and anchos, it is a salsa of chile peppers. Salsa in Mexico means sauce. If you call your salsa, "salsa de tomate," you are making a tomato sauce sans peppers. If a Mexican says, "I am making tomato salsa," peppers would never be ingredients. Because it contains ancho peppers and jalapeño peppers, the item in Exam Question 46 is disqualified from being a tomato sauce or a tomato puree.

## Question 54

These are the facts that CBP offered for Exam Question 54:

> The new owner of a previously recorded trademark would like to continue the recordation with CBP. *The trademark is for an item with a gray market counterpart the owner would like protection against based on physical and material differences*. The following are all actions the owner must take to continue the recordation EXCEPT:

(emphasis added).  The highlighted "sentence" is nonsensical and therefore nullifies Exam Question 54.

Exam-takers are not granted any credit for nearly getting the correct answer. CBP is similarly burdened with perfection by having to devise exam questions that absolutely comport with logic and that use simple, understandable English. Exam questions must make sense. When CBP fails in this responsibility, its failure cannot be used to deny credit to exam-takers. The language quoted above from Exam Question 54 is evidence of such a failure. Its meaning is obscure and its structure clumsy and flawed. Before CBP inserted the sentence to Exam Question 54, CBP should have rewritten, simplified, and corrected its grammar and punctuation. But that did not happen. Instead, Exam Question 54 became quicksand for those trying to meet the four-hour deadline of the customs broker exam.

Answer C compounds the mess that is Exam Question 54. It states, "The following are all actions the owner must take to continue the recordation." All of the options/multiple choices that follow should thus be in the form of actions. Here is answer C:

> The identity of any parent or subsidiary company or other foreign company under common ownership (only for those with aggregate ownership of more than 40% of the business entity) and common control which uses the trademark abroad

No action, no verb is to be found in answer C. Thus, not only is Exam Question 54 impenetrable and confusing, but so are its answers. The Court should strike Exam Question 54 and grant credit for a correct answer to Plaintiff.

## **Question 63**

This is Exam Question 63:

A shipment has arrived on an East coast port with an arrival date of Monday, May 4, 2020, at 11:05AM Eastern Time (ET). The error-free entry summary, with payment, is submitted at the arrival port on Thursday May 7, 2020, at 16:40PM ET. What is the presentation date and time for non-opening moment quota purposes?

> A. Monday, May 4, 2020 – 11:05AM ET
> B. Tuesday, May 5, 2020 – 08:00AM ET
> C. Thursday, May 7, 2020 – 16:40PM ET
> D. Friday May, 8, 2020 – 08:30AM ET
> E. Friday May, 8, 2020 – 09:00AM ET

CBP official answer is D.  Here is how it defends that answer:

> Because the Facts of Question 63 show that the entry summary and payment were provided to the port of arrival at "16:40PM ET" or 4:40 PM ET ***without stipulating authorization for overtime services***, 19 CFR 141.62(b) becomes relevant. That subsection provides that the time of filing of entry and entry summary shall be "normal business hours."

While it is true that Exam Question 63 did not stipulate that overtime services were authorized, it also did not stipulate that overtime services had not been authorized. If overtime services had been authorized, answer C is correct. If they had not been authorized, answer D (CBP's answer) is correct. CBP could have easily cured this ambiguity by making its preferred stipulation clear. CBP did not cure the ambiguity and left exam-taker in a lurch. Given its ambiguity, Exam Question 63 should not be counted against Plaintiff's final exam score.

## **Question 78**

This is Exam Question 78:

> 78. Under which scenario can a broker bill a freight forwarder (FF) for Customs duties without sending a copy to the importer?
>     A. The broker obtains a Sub-Power of Attorney (POA) from the FF, on behalf of the importer, and a valid POA from the importer.

B. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions.

C. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions and the broker transmits directly to the FF, a true copy of the brokerage charges for the fees and charges collected by or through the forwarder.

D. The broker is provided a POA from the FF, on behalf of the importer, to handle the importer's Customs transactions.

E. The broker is provided the importer's signed waiver of the requirement to receive a true copy of the broker charges, when fees and charges are to be collected by or through the FF, and the importer is told in advance the name of the broker selected by the FF to handle their Customs transactions.

Plaintiff answered D, while CBP claimed the correct answer is E. As it argued at the administrative level, Exam Question 78 does not make sense. The Court should disqualify Exam Question 78 and grant credit to Plaintiff for a correct answer.

Exam Question 78 posits a situation where a broker bills a freight forwarder for Customs duties. The problem is that a broker cannot bill a freight forwarder, importer, or anyone else for Customs duties. Ever. Only CBP bills importers for customs duties. While brokers are often retained to collect funds from an importer (perhaps through a freight forwarder as permitted by 19 CFR §111.36(a)), only CBP, at the direction of the U.S. Treasury Department, is allowed to bill and collect customs duties. A broker may be permitted to bill an importer or freight forwarder (again, upon compliance of 19 CFR §111.36(a)) for its efforts in calculating and collecting the customs duties and then remitting those fees to CBP, but those duties are not for the broker's own coffers. In other words, an importer is limited to being compensated for conducting customs business, as defined in 19 CFR §111.1:

"Customs business" means those activities involving transactions with CBP concerning the entry and admissibility of merchandise,

> its classification and valuation, the payment of duties, taxes, or ***other charges assessed or collected by CBP*** on merchandise by reason of its importation, and the refund, rebate, or drawback of those duties, taxes, or other charges. "Customs business" also includes the preparation, and activities relating to the preparation, of documents in any format and the electronic transmission of documents and parts of documents intended to be filed with CBP in furtherance of any other customs business activity, whether or not signed or filed by the preparer. However, "customs business" does not include the mere electronic transmission of data received for transmission to CBP and does not include a corporate compliance activity.

(emphasis added).

Plaintiff is not required to rewrite Exam Question 78 to make it intelligible. That Plaintiff feels compelled to here offer a rewrite illustrates that Exam Question 78 is not intelligible. Instead of the nonsensical "bill a freight forwarder (FF) for Customs duties," Exam Question 78 could have been written like this: "collect from the freight forwarder the customs duties that the broker calculated that the importer owes to CBP and that the broker will pay on the importer's behalf to CBP." But Exam Question 78 is not written with this clarity, logic, and is not based on the duties that brokers are actually allowed to perform.

The importance of specifying that a broker collects, and does not bill, customs duties on behalf of a customs broker should be obvious to CBP. It was obvious in HQ H318461, a recent binding ruling from CBP on facts similar to those in Exam Question 78. CBP takes great care (as it should have in Exam Question 78) in the binding ruling to emphasize that the broker is limited to collecting customs duties. Plaintiff attaches HQ H318461 as Exhibit B and highlights the instances where CBP emphasized "collection."

Exam Question 78 cannot be counted as a wrong answer against Plaintiff. Plaintiff respectfully requests full credit for a correct answer.

## PRAYER

For the reasons stated above, Plaintiff requests that the Court reverse CBP's denial of Plaintiff's appeal.

/s/ Oscar Gonzalez
**OSCAR GONZALEZ**
oscarg@internationaltrade.law
469.774.47903

/s/ Ruth Rodriguez
**RUTH RODRIGUEZ**
ruthr@internationaltrade.law
469.767.0367

**GONZALEZ ROLON VALDESPINO & RODRIGUEZ, LLC**
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219

**ATTORNEYS FOR PLAINTIFF**
**BRANDON CHEN**

## CERTIFICATE OF SERVICE

On November 25, 2024, I mailed a copy of the Summons and Complaint via US mail, certified return receipt requested to the following:

Justin R. Miller
Attorney-In-Charge
International Trade Field Office
U.S. Dept. of Justice, Civil Division
26 Federal Plaza, Rm. 346
New York, NY 10278

AnnMarie R. Highsmith
Executive Assistant Commissioner
Office of Trade
U.S. Customs and Border Protection
1300 Pennsylvania Avenue NW
Room 3.5A
Washington, DC 20229

November 25, 2024