UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JANE A. RESTANI

| | |
|---|---|
| BRANDON CHEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 24-00208 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| U.S. CUSTOMS AND BORDER ) | |
| PROTECTION, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2 AND SUPPORTING BRIEF

Oscar Gonzalez
Ruth Rodriguez
Gonzalez Rolon Valdespino & Rodriguez
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219
Attorneys for Plaintiff
Brandon Chen

Dated:  April 7, 2025

## TABLE OF CONTENTS

I.    RULE 56.1 MOTION ........................................................................................... 1

II.   ISSUES PRESENTED........................................................................................... 1

III.  STATEMENT OF FACTS..................................................................................... 2

IV.   STANDARD OF REVIEW.................................................................................... 2

V.    ARGUMENTS....................................................................................................... 3

      EXAM QUESTION 38.................................................................................... 3

      EXAM QUESTION  39.................................................................................. 11

      EXAM QUESTION  42.................................................................................. 12

      EXAM QUESTION  44.................................................................................. 14

      EXAM QUESTION 46.................................................................................... 16

      EXAM QUESTION  29.................................................................................. 17

      EXAM QUESTION  14.................................................................................. 19

      EXAM QUESTION  36.................................................................................. 20

      EXAM QUESTION  54.................................................................................. 21

      EXAM QUESTION 63.................................................................................... 22

      EXAM QUESTION  78.................................................................................. 23

VI.   PRAYER/CONCLUSION ................................................................................... 26

## TABLE OF AUTHORITIES

**CASES**

*Harak v. United States*, 30 Ct. Int'l Trade 908, 928 (2006) ................................... 3

*Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005) (citing 5 U.S.C. § 706) ................ 3

*O'Quinn v. United States,* 24 Ct. Int'l Trade 324, 328, 100 F. Supp. 2d 1136, 1140 (2000) ......................................................................................................... 3

*Taiwan Semiconductor Indus. Ass'n v. Micron Tech., Inc.*, 266 F.3d 1339, 1343 (Fed. Cir. 2001) ............................................................................................... 3

**STATUTES**

19 U.S.C. § 1641........................................................................................................... 2

19 U.S.C. § 1641(e)(3)................................................................................................. 3

28 U.S.C. § 1581(c) ..................................................................................................... 1

**RULES**

Local Rule 56.1 ............................................................................................................. 1

**BINDING RULINGS**

*HQ H318461*.............................................................................................................. 24

**OTHER AUTHORITIES**

*What Every Member of the Trade Community Should Know About: Tariff
Classification, An Informed Compliance Publication*, (U.S. Customs and Border
Protection, May 2004) ................................................................................................. 4

I.    **RULE 56.1 MOTION**

Pursuant to Rule 56.1 of the Rules of the United States Court of International Trade, Brandon Chen, Plaintiff, respectfully moves for a Judgment on the Agency Record with respect to his appeal of the score from U.S. Customs and Border Protection ("CBP") on the customs broker exam.

The parties agree that this matter should be decided pursuant to Local Rule 56.1 Judgment on an Agency Record for an Action Other Than That Described in 28 U.S.C. § 1581(c).

Plaintiff believes that additional approval from the court is not necessary to present the arguments in this supporting brief. However, if such approval is required, Plaintiff respectfully requests the Court's permission to submit his arguments.

II.    **ISSUES PRESENTED**

    **A.  Are Plaintiff's answers, correct?**

Yes.  Plaintiff answers to the following exam questions are correct: 28, 39, 42, 44, 46, and 29.  CBP's decision to not give Plaintiff credit is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

    **B.  Are CBP's exam questions so flawed to render them unfair, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law?**

Yes.  Questions 14, 36, 54, 63, and 78 are so flawed that they did not permit Plaintiff the opportunity to answer correctly.  Thus, CBP's decision to mark Plaintiff's answers as incorrect is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## III.    STATEMENT OF FACTS

Plaintiff took the April 27, 2022, customs broker exam. *ECF Doc. 13 at AR 001 – AR 035.*

On May 10, 2022, CBP issued its official pass/fail letter to Plaintiff informing Plaintiff that he had received a score of 66.25 percent when 75 percent was the minimum passing score. *Id. at AR 040 - AR 042.*

On July 7, 2022, Plaintiff filed his first administrative appeal.  *Id. at AR 043 – AR - 065.*

On March 3, 2023, CBP issued its decision on Plaintiff's first appeal. Plaintiff achieved a score of 66.25 percent at this level. In other words, CBP granted zero questions on Plaintiff's first appeal. *Id. at AR 066 – AR 067.*

On April 30, 2023, Plaintiff filed his second administrative appeal. *Id. at AR 068 – AR 088.*

On October 3, 2024, CBP issued its second and final decision on Plaintiff's appeal. *Id. at AR 191.* CBP granted credit to Plaintiff for five correct questions.  Plaintiff achieved a score of 72.50 percent. No further administrative appeal was permitted.

CBP did not grant credit to Plaintiff on eleven exam questions: 14, 29, 36, 38, 39, 42, 44, 46, 54, 63, and 78.  Plaintiff appeals through this lawsuit CBP's decisions on all eleven of Plaintiff's answers.

Plaintiff is only two correct answers away from achieving a passing score of 75 percent.

## IV.    STANDARD OF REVIEW

In assessing CBP's ultimate licensing decision, "[c]onsistent with the broad powers vested in the Secretary [of the Treasury] for licensing customs brokers under 19 U.S.C. § 1641, the denial of a license can be overturned only if the decision was arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with the law." *Kenny v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005) (citing 5 U.S.C. § 706).

Within that framework, decisions as to individual CBLE questions are reviewed for support by substantial evidence, as detailed in *Kenny*:

> Underpinning a decision to deny a license arising from an applicant's failure to pass the licensing examination are factual determinations grounded in examination administration issues—[including] the allowance of credit for answers other than the official answer—which are subject to limited judicial review because "[t]he findings of the Secretary [of the Treasury] as to the facts, if supported by substantial evidence, shall be conclusive."

401 F.3d at 1361 (quoting 19 U.S.C. § 1641(e)(3)). In *Kenny*, "[o]n questions of substantial evidence, we review the decisions of the Court of International Trade `by stepping into [its] shoes . . . and duplicating its review.'" *Id.* (quoting *Taiwan Semiconductor v. Micron Tech.,* 266 F.3d 1339, 1343 (Fed. Cir. 2001)).

The CIT has granted examinees credit on appeal when:

> (1) the omission of relevant statutory or regulatory language would result in the question falsely characterizing the applicable provision, (2) the inclusion or omission of language would result in "the question's incorrect use of" a relevant term, or (3) the inclusion or omission of language would result in the question "not contain[ing] sufficient information [for an applicant] to choose an answer."

CIT Op. at 1353 (first citing *Harak v. United States*, 30 Ct. Int'l Trade 908, 928 (2006); and then quoting *O'Quinn v. United States*, 100 F. Supp. 2d 1136, 1140 (CIT 2000)).

## V.    ARGUMENTS

### <u>EXAM QUESTION 38</u>

Question 38 asks for the proper classification of a book of crossword puzzles. Plaintiff answered A, 4901.99.0093. Heading 4901 reads:

> Printed books, brochures, leaflets and similar printed matter, whether or not in single sheets:

However, CBP's official answer is D, 9503.00.90. Heading 9503 reads:

> Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof...

In CBP's own words, here is how to choose between two competing HTSUS headings when classifying an item:

> When classifying merchandise, one must be aware that due to the hierarchical structure of the Harmonized System: (1) merchandise must first be classified in the Harmonized System in the 4-digit heading whose terms most specifically describe the merchandise (unless otherwise required or directed by the GRIs); and (2) only 4-digit headings are comparable (***i.e., no consideration should be given to the terms of any subheading within any 4-digit heading when considering the proper classification of merchandise at the 4-digit heading level***). EXAMPLE: An electric toothbrush could potentially be classified in heading 8509 as an electromechanical domestic appliance with self-contained motor and in heading 9603 as a brush. Within heading 9603, subheading 9603.21 provides for "toothbrushes." No consideration should be given to this subheading when comparing the terms of the headings to determine the appropriate heading for classification of the electric toothbrush (as merchandise must first be classified in the Harmonized System at the heading level by the terms of the headings).

*What Every Member of the Trade Community Should Know About: Tariff Classification, An Informed Compliance Publication*, (U.S. Customs and Border Protection, May 2004), p. 13 (emphasis added). Thus, the question is which heading, between 4901 and 9503, more specifically describes a book of crossword puzzles. If the issue can be decided at this point, consulting subheadings is not permitted. The analysis ends and the classification is decided.

One additional tool is needed to classify a book of crossword puzzles. *Ejusdem generis*, Latin for "of the same kind," is a rule of construction commonly and historically used by CBP

and by the courts to classify items under the HTSUS. We are compelled to ask whether a book of crossword puzzles is of the same kind as the items under heading 4901 or 9503.

A book clearly and absolutely does not belong with the toys for little kids and babies of heading 9503:

> Tricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced scale ("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof...

The language "puzzles of all kinds" in heading 9503 does not change this result. There are "puzzles of all kinds" that are still little kid toys as shown in this Google search results for "children toy puzzles":



None of these "puzzles of all kinds" are remotely similar to a book. The phrase "puzzles of all kinds" is limited to children's toys and, despite its terms, does not capture everything that refers

to a puzzle.  It does not capture mystery novels or scientific studies.  "Puzzles of all kinds" does

not capture any of the following books (plus one movie) even though they all have "puzzle" in

their title):





.

For the same reason, Heading 9503 also does not capture a book of crossword puzzles.

Here is the first result when Plaintiff Googles "book of crossword puzzles":



This book plus the other search results would challenge most college-degreed people and do not

belong with children's toys of Heading 9503. Google is not alone in associating "book of

crossword puzzles" with books suited for college-educated adults. The same search on Amazon

Prime produces a similar book from the same author:



It is telling that Amazon Prime categorizes or classifies "a book of crossword puzzles" under books and not under toys.

Here Plaintiff reproduces heading 9503 in graphic form and in the same order as items are listed in heading 9503. The last item shown is the book of crossword puzzles. For CBP's answer to be correct, a book of crossword puzzles would have to be classified with these toys.

Clearly, the book of crossword puzzles does not belong with the toys of heading 9503. Answer D is thus incorrect.

In contrast, Heading 4901 reads, "Printed books, brochures, leaflets and similar printed matter, whether or not in single sheets". Is a book of crossword puzzles a "printed book?" Yes, a book of crossword puzzles is a printed book as explicitly provided in heading 4901. Plaintiff's answer A is a far better fit than CBP's answer D.

Plaintiff realizes that there may be CBP binding rulings that produce a different result and that agree with CBP's answer, but binding rulings are irrelevant because they were not included in the official tested materials, i.e., the Notice of Examination.

CBP's explains why it rejected Plaintiff's answer:

> Per a GRI 1 analysis, Appellant Chen should have reviewed Note l(c) to Chapter 49, which clearly states that "[p] laying cards or other goods of chapter 95" are not covered by Chapter 49. As such, Appellant Chen should then have looked to the headings, chapter notes, and section notes of Chapter 95 to determine whether the book of crossword puzzles is precluded from classification under the headings of Chapter 95 and, therefore, viable for classification in a heading of Chapter 49. No such preclusion exists in the chapter or section notes and heading 9503 explicitly provides for "puzzles of all kinds." Therefore, viable classification in heading 9503 precludes classification in any heading of Chapter 49.

CBP's argument is begging the question. It is circular and conclusory. CBP assumes that a book of crossword puzzles is included in the exclusion "Playing cards or other goods of chapter 95." CBP failed to explain why or how that exclusion applied to a book of crossword puzzles.

Moreover, CBP's reliance on "puzzles of all kinds" is misplaced. The "of all kinds" language is found throughout the HTSUS and it never prevents a book from being classified as a book just because of the topic is an item provides an "of all kinds" subclassification. Let us look at three examples: cheese, ferry boats, and drills. Each of these items has a subclassification with the "of all kinds" language.

For cheese, the "of all kinds" language is found in 0406.20:

**Harmonized Tariff Schedule of the United States (2019)**
Annotated for Statistical Reporting Purposes

I
4-44

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rate |  |
|---|---|---|---|---|---|
|  |  |  |  | General | 1 |
| 0406 (con.) 0406.20 |  | Cheese and curd: (con.) Grated or powdered cheese, of all kinds: Blue-veined cheese: |  |  |  |
| 0406.20.10 | 00 | Roquefort cheese............................................. | kg.............. | 8% | Free CL JO |

Although there are hundreds of books about cheese, here are just a few samples:



These books about cheese would never be classified as cheese even though the "of all kinds" language is present.

The "of all kinds" language for ferry boats is found in 8901.10.00:

**Harmonized Tariff Schedule of the United States (2019)**
Annotated for Statistical Reporting Purposes

XVII
89-2

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rate |  |
|---|---|---|---|---|---|
|  |  |  |  | General | 1 |
| 8901 8901.10.00 | 00 | Cruise ships, excursion boats, ferry boats, cargo ships, barges and similar vessels for the transport of persons or goods: Cruise ships, excursion boats and similar vessels principally designed for the transport of persons; ferry boats of all kinds............................................. | No.............. | Free[1/] |  |

Here are books about ferries:



These books about ferries would never be classified as ferries or boat even though the "of all kinds" language is present.

The "of all kinds" language for drills is found in 8467.21.00:

| XVI 84-90 | | | | | | |
|---|---|---|---|---|---|---|
| | | | Harmonized Tariff Schedule of the United States (2019) Annotated for Statistical Reporting Purposes | | | |
| Heading/ Subheading | Stat. Suf-fix | | Article Description | Unit of Quantity | Rate 1 | |
| | | | | | General | |
| 8467 (con.) | | | Tools for working in the hand, pneumatic, hydraulic or with self-contained electric or nonelectric motor, and parts thereof: (con.) | | | |
| 8467.21.00 | | | With self-contained electric motor: Drills of all kinds............................................. | ................. | 1.7%[31/] | Free (A CA, C IL, .IC |

Here are books about drills:



These books about drills would never be classified as drills even though the "of all kinds" language is present.

Just as none of these books would be classified under cheese, ferries, or drills, a book of crossword puzzles cannot be classified with toys for little kids and babies of heading 9503.

## EXAM QUESTION  39

Question 39 asks for the classification of a children's detangling hairbrush with plastic handle and features soft bristles on a sponge base. The brush can be used on wet or dry hair and is valued at 52 cents each. As with Question 38, the correct answer to Question 39 is determined by the HTSUS heading. Plaintiff chose answer E, 9615.11.3000 which includes "combs, hair-slides and the like". CBP's official answer is B, 9603.29.8010, which includes "[b]rooms, brushes (including brushes constituting parts of machines, appliances or vehicles, hand -operated mechanical floor sweepers, not motorized, mops and feather dusters.

CBP provides the following justification for denying Plaintiff's answer:

> Per a GRI 1 analysis, Appellant Chen should have reviewed heading 9603, which clearly states that hairbrushes are classified in that heading. Therefore, viable classification precludes classification in heading 9615.

This "heading 9603…clearly states that hairbrushes are classified in that heading" is the only rational that CBP offers to support its preferred exam answer. The problem is that this is no explanation at all. CBP does not explain where heading 9603 supposedly makes that clear statement. Here is heading 9603:

> Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush making; paint pads and rollers; squeegees (other than roller squeegees):

Heading 9603 contains only 39 words, all of which deal with industrial cleaning machines and tools. If a children's detangling hairbrush or anything that resembles a children's detangling hairbrush is found in this heading (as CBP claims), then CBP should have pointed it out. Clearly

CBP failed to justify its conclusion because Heading 9603 is the wrong place for a children's detangling hairbrush. Having failed to explain its answer and its denial of Plaintiff's answer, CBP is not allowed to now supplement the administrative record and try to conjure up to new reasons to support its denial of Plaintiff's answer. Without Plaintiff having to offer any additional argument, this Court should grant Plaintiff credit for a correct answer to Question 39 because CBP failed to provide any reason for denying Plaintiff's exam answer or supporting its own exam answer.

Also, Plaintiff restates his argument that he offered at the administrative level: his answer is correct because a children's detangling hairbrush belongs in Heading 9615, which reads:

> Combs, hair-slides and the like; hairpins, curling pins, curling grips, hair-curlers and the like, other than those of heading 8516, and parts thereof:

In contrast to CBP's oversight, Plaintiff explains where and why a children's detangling hairbrush fits perfectly in Heading 9615. A children's detangling hairbrush is a tool used on a person's hair, a small person, but still a person. It is very much like a comb, hair-slides and the like; hairpins, curling pins, and hair-curlers of Heading 9615. These are the tools of a hairdresser or hairstylist uses at a beauty salon or perhaps the implements that a loving parent uses on their child. They are not the industrial machinery used to scrub floors and paint walls of Heading 9603. CBP's decision not to provide Plaintiff with credit for a correct answer is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## EXAM QUESTION 42

Exam question 42 asks for the classification of the following product:

> Best Seafood Import Company is entering a product called "Bonito del Norte" from Spain. The fish is in pieces, packaged in glass jars and is invoiced as "Bonito del Norte, White Tuna in Olive Oil." The documents provided include National Oceanic and Atmospheric Administration (NOAA) Form 370 "Fisheries

Certificate of Origin", which lists "Thunnus Alalunga in Oil"
under the "Description of Fish" section, and a Captain's Statement
stating that no dolphins were harmed during the catch.

Plaintiff chose exam answer A. 0302.31.0000, which covers "Fish, fresh or chilled," while

CBP's official exam answer is B. 1604.14.1091, which covers, "Prepared or preserved fish;

caviar and caviar substitutes prepared from fish eggs."

CBP offers only one sentence of explanation to deny Plaintiff's exam answer:

The product as issue is tuna pieces in oil, and thus would be
considered a "prepared fish," not "fresh or chilled," under heading
0302, HTSUS.

CBP places quotation marks around two phrases to conclude that they are mutually exclusive:

"prepared fish" and "fresh or chilled." But one of the phrases, "prepared fish," despite CBP's use

of quotation marks, is nowhere to be seen in Heading 1601.  The problem is that Heading 1601

does not define "prepared fish."  Indeed, nowhere in the HTSUS is "prepared fish" defined and

nowhere does the HTSUS say that "prepared fish" and "fresh or chilled" are mutually exclusive.

"Prepared fish" means fish could be reasonably be understood to mean fish that is fully prepared

and plated ready to serve as a meal, perhaps a TV dinner. On the other hand, the product in the

question was merely cut, put in glass jars filled with oil. That does not sound like enough to

make it "prepared". Fish in oil can be easily refrigerated and thus stored and served chilled,

making it fresh or chilled fish. Again, there is nothing in Heading 0302 or Heading 1604 to even

suggest that these alternative (from CBP's understanding) suggestions are not correct. It may be

that CBP is relying on industry definitions to justify its preferred exam answer and deny the

exam answer that Plaintiff chose.  Plaintiff did not have access to seafood industry definitions as

seafood industry definitions were not listed in CBP's official Notice of Examination. CBP's

decision not to provide Plaintiff with credit for a correct answer is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## EXAM QUESTION  44

Exam Question 44 asks for the classification of a 1,080-pixel high-definition digital camera with an interchangeable lens and three-inch liquid crystal display (LCD) that captures both still images and moving images.  Plaintiff chose Exam Answer D. 8525.80.5050, "other than digital still image video camera," but CBP's official Exam Answer was B. 8525.80.4000, "digital still video camera."

CBP and Plaintiff converged on the same classification number except for the final four digits, as seen here:

| 8525.80.40 | 00 | Digital still image video cameras..... |
|---|---|---|
| 8525.80.50 | | Other:................................................ |
| | | |
| | | |
| | | Camcorders: |
| | 10 | 8 mm...................................... |
| | 20 | Other..................................... |

CBP claims that the camera in question is classified under "Digital still image video cameras." Here is CBP's explanation:

> The Facts dictate the article is a digital camera. As such, it is classified in subheading 8525.80, HTSUS, which provides for "digital still image video cameras." The Facts in the question indicate that the subject merchandise " ... captures both still images and moving images." The term "digital still image video camera" clearly indicates the ability to capture still images while also functioning as a video camera. Therefore, the camera is properly classified under statistical reporting number 8525.80.4000.

Appellant Brandon Chen argues the digital camera is classified under subheading 8525.80.50, HTSUS. Appellant Chen contends the term "moving images" is not found in subheading 8525.80.40, HTSUS, so it cannot be the correct answer. Furthermore, Appellant Chen contends examinees cannot be expected to know the precise technical definition of "video cameras," which is undefined in the HTSUS.

Appellant Chen incorrectly assumes the lack of the term "moving images" in subheading 8525.80.40 means the subheading could not describe an article that captures moving images. Moreover, understanding the term "digital still image video cameras" does not require "precise technical knowledge" as the common meaning of those terms, as discussed above, indicates a camera that captures both moving and still images.

CBP claims that "digital still image video cameras" is commonly understood and requires no "precise technical knowledge. CBP is wrong and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  "Digital still image video cameras" is a *non sequitur* to the common person.

Plaintiff could find no matches or examples online for "Digital still image video cameras, "except for CBP rulings. However, CBP ruling are not irrelevant to the customs broker exam because they are not in CBP's official Notice of Examination and because exam takers cannot access any of CBP's 200,000 rulings in the middle of the exam. Plaintiff could probably find no matches or examples online because calling merchandise by that label would confuse consumers. A still image is different from a video. A still image is an image that does not move while a video moves, which explains why videos are also called movies.  Subheading 8525.4000, Exam Answer B, might have been the correct classification if it read "Digital still image ***and*** video cameras." The conjunction "and" would mean that the digital camera records both still images and video. But Subheading 8525.80.50 does not have that conjunction. Moreover, the capabilities of "Digital still image video camera" under Subheading 8525.4000 are never

explained in the HTSUS, thus rendering the meaning of the subheading beyond a common understanding.

Nothing prevented CBP from using "digital still image video camera" in Exam Question 44 instead of "a digital camera that captures both still images and moving images." The two descriptions do not mean the same thing, at least not in the normal, non-expert vernacular. By not using the exact same phrasing in Exam Question 44 as is found in Subheading 8525.4000, that provision was automatically disqualified as a correct answer. The only remaining and possible answer was thus "other than digital still image video camera" under Subheading 8525.80.5050, Exam Answer D.

## EXAM QUESTION 46

Exam Question 46 requests the classification of a of a thick salsa in a seven-ounce jar containing: tomato puree, jalapeño peppers, vinegar, ancho peppers, onions, cascabel peppers, garlic, salt, cottonseed oil, bay leaves, and spices. CBP offered the correct answer as C, 2103.20.4020, "Tomato ketchup and other tomato sauces" while Plaintiff answered A, 2002.90.8050, "Tomatoes prepared or preserved otherwise than by vinegar or acetic acid."

Although Exam Question 46 does not call it Mexican salsa, the jalapeños and anchos undoubtedly make it Mexican. Save perhaps of a few unfortunate souls located somewhere in the arctic poles who have never tasted Mexican salsa, no one would ever mistake Mexican salsa for tomato sauce. CBP's Exam Answer C is obviously incorrect. Plaintiff made this objection and argument at the administrative level. CBP did not even acknowledge the argument. Here is the entire and only reasoning that CBP provided for its decision:

> Appellant Brandon Chen selected Answer Choice A, which is incorrect because subheading 2002.90.8050, HTSUSA, provides for "Tomatoes prepared or preserved otherwise than by vinegar or acetic acid: Other: Other." The product at issue is a tomato puree-

based salsa which, in addition to other ingredients, is preserved in vinegar. The appeal for Question 46 is denied.

CBP gave no rebuttal to Plaintiff's challenge and did not defend its own answer. Thus, CBP's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. CBP may not now supplement the administrative record to offer a rebuttal or a defense. Thus, without Plaintiff having to prove anything further, the Court should strike Question 46 and should credit Plaintiff with the correct answer.

## EXAM QUESTION  29

Exam Question 29 asks for the type of entry that is required for goods brought into the customs territory of the United States by the National Aeronautics and Space Administration (NASA) from space or from a foreign country as part of an international program of NASA.  The official answer from CBP is E: "Entry is not required."  Plaintiff answered A: "01 - Formal Entry."

As he is permitted to do, Plaintiff ultimately relied upon common knowledge because Exam Question 29 was ambiguous at best. Plaintiff remembered seeing and reading about the following document:

---

**GENERAL DECLARATION**

(Outward/Inward)

AGRICULTURE, CUSTOMS, IMMIGRATION, AND PUBLIC HEALTH

Owner or Operator ........ NATIONAL AERONAUTICS AND SPACE ADMINISTRATION

Marks of
Nationality and Registration ...... U.S.A.     Flight No. ... APOLLO 11    Date ... JULY 24, 1969

Departure from ........ MOON                Arrival at ...... HONOLULU, HAWAII, U.S.A.
                    (Place and Country)                              (Place and Country)

**FLIGHT ROUTING**

("Place" Column always to list origin, every en-route stop and destination)

| PLACE | TOTAL NUMBER OF CREW | NUMBER OF PASSENGERS ON THIS STAGE | CARGO |
|---|---|---|---|
| CAPE KENNEDY | COMMANDER NEIL A. ARMSTRONG | | |
| MOON | | **Departure Place:** | MOON ROCK AND MOON DUST SAMPLES Cargo Manifests Attached |
| JULY 24, 1969 HONOLULU | COLONEL EDWIN E. ALDRIN, JR. | Embarking ..... NIL  Through on same flight ..... NIL | |
| | | **Arrival Place:** | |
| | | Disembarking ..... NIL  Through on same flight ..... NIL | |
| | LT. COLONEL MICHAEL COLLINS | | |

**Declaration of Health**

Persons on board known to be suffering from illness other than airsickness or the effects of accidents, as well as those cases of illness disembarked during the flight:

NONE

Any other condition on board which may lead to the spread of disease:

TO BE DETERMINED

Details of each disinsecting or sanitary treatment (place, date, time, method) during the flight. If no disinsecting has been carried out during the flight give details of most recent disinsecting:

Signed, if required ........................ Crew Member Concerned

For official use only

HONOLULU AIRPORT
Honolulu, Hawaii
ENTERED

*Ernest I. Murai*
Customs Inspector

I declare that all statements and particulars contained in this General Declaration, and in any supplementary forms required to be presented with this General Declaration are complete, exact and true to the best of my knowledge and that all through passengers will continue/have continued on the flight.

That the Apollo 11 NASA crew was required to file this customs entry/declaration upon their return from the moon is commonly known by customs brokers and by those wishing to become customs brokers. Because history famously records this entry, only absolutely clear authority to

the contrary could convince an exam-taker that no entry whatsoever is required for NASA's importations from space.

The regulations and the HTSUS are unclear about whether an entry is required for NASA importations from space. To start, a duty-free entry is not the same as no entry required or no importation made. A duty-free entry assumes that there is has been an importation and an entry, but with an applicable duty rate of zero. 19 CFR 10.102(a) provides duty-free entry for the following HTSUS items:

> 9808.00.10, 9808.00.20, 9808.00.30, 9808.00.40, 9808.00.50, 9808.00.60, 9808.00.70, ***or other subheadings*** in the Harmonized Tariff Schedule of the United States (HTSUS)

(emphasis added). In other words, other subheadings under Heading 9808 also grant duty-free entry status. One such subheading is 9808.00.80000, the very subheading that CBP cites to in support of its no entry required choice in answer E. Granted, Subheading 9808.00.8000 states that no entry is required, but 19 CFR 10.102(a) allows for that subheading to be permitted duty-free status. This clash between a regulation and an HTSUS subheading forced Plaintiff to guess at the correct answer, and faced with this Hobson's choice, Plaintiff knew that at least once in our nation's history, an entry was required in this kind of space importation. Plaintiff's choice is defensible. CBP's decision not to provide Plaintiff with credit for a correct answer is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Plaintiff should receive credit for a correct answer.

## EXAM QUESTION  14

Question 14 asserts that "a monetary penalty will be assessed" if there has been no entry made for the merchandise, but the owner, operator of an imported vehicle or agent fails to notify CBP no later than 20 calendar days after landing. Question 14 is premised on the existence of a

mandatory penalty.  However, 19 CFR 123.10(a), the regulation that CBP invokes, reads, "Failure to provide such notification ***may*** result in assessment of a monetary penalty of up to $1,000 per bill of lading against the owner or operator of the vehicle or the agent thereof." (emphasis added).  Thus, CBP is wrong in basing its official answer to question 14 on 19 CFR 123.10 because that regulation is discretionary and CBP's wording in question 14 does not permit any discretion, i.e., the monetary penalty will be assessed.  A flaw in the premise of an exam question disqualifies the question and the exam-taker must be credited with the correct answer. Exam  takers must pick the single correct answer.  They get no credit for nearly getting the correct answer.  Just as the exam-taker must be perfect, the exam writer (CBP) must be perfect.  If the premise in a question or answer is flawed, its conclusion cannot stand. The multiple-choice format is brutal and unforgiving both for exam takers and CBP.  An exam taker should not be required to guess what CBP intended in a question or give CBP the benefit of the doubt.  If Plaintiff had to guess what Question 14 is actually asking, it would be "what is the maximum mandatory penalty that CBP may impose?"  The problem is that there is no mandatory penalty under 19 CFR 123.10(a). CBP's official answer of A cannot be correct and is thus arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. If CBP's official answer is wrong, then entire question is flawed and Plaintiff's answer cannot be counted against him.  This Court should give Plaintiff full credit for question 14.

## EXAM QUESTION 36

At 268 words and with its dozens of clauses, Plaintiff found Exam Question 36 to be an impossible slog. It was too long, too dense, too unwieldy, and too confusing to be considered a fair exam question and should be stricken and Plaintiff given credit for a correct answer.  The

exam question is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Lest Plaintiff be accused of exaggeration, here is Exam Question 36:

> A basic importation and entry bond must contain all of the following bond conditions EXCEPT:
>
> A. If access to the customs security areas at airports is desired, the principal (including its employees, agents, and contractors) agrees to comply with the CBP regulations in 19 CFR, Chapter 1, applicable to customs security areas at airports. If the principal defaults, the obligors (principal and surety, jointly and severally) agree to pay liquidated damages of $1,000 for each default or such other amount as may be authorized by law or regulation.
>
> B. The principal agrees to keep safe any merchandise placed in its custody including, when approved by CBP, repack and transfer such merchandise when necessary for its safety or preservation.
>
> C. If merchandise is released conditionally to the principal before all required documents or other evidence is produced, the principal agrees to furnish CBP with any document or evidence as required by law or regulation, and within the time specified by law or regulations.
>
> D. If merchandise is released conditionally to the principal before its right to admission into the United States is determined, the principal, after notification, agrees to mark, clean, fumigate, destroy, export, or do any other thing to the merchandise in order to comply with the law and regulations governing its admission into the United States with the time period set in the notification.
>
> E. If the principal obtains permission to have any merchandise examined elsewhere than at a wharf or other place in charge of a CBP officer, the principal agrees to hold the merchandise at the place of examination until the merchandise is properly released.

## EXAM QUESTION 54

These are the facts that CBP offered for Exam Question 54:

> The new owner of a previously recorded trademark would like to continue the recordation with CBP. ***The trademark is for an item with a gray market counterpart the owner would like protection against based on physical and material differences.*** The following are

> all actions the owner must take to continue the recordation
> EXCEPT:

(emphasis added). Exam-takers are not granted any credit for nearly getting the correct answer. CBP is similarly burdened with perfection by having to devise exam questions that absolutely comport with logic and that use simple, understandable English. Exam questions must make sense. When CBP fails in this responsibility and it thus was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. CBP's failure cannot be used to deny credit to exam-takers. The language quoted above from Exam Question 54 is evidence of such a failure. Its meaning is obscure and its structure clumsy and flawed. Before CBP inserted the sentence to Exam Question 54, CBP should have rewritten, simplified, and corrected its grammar and punctuation. But that did not happen. Instead, Exam Question 54 became quicksand for those trying to meet the four-hour deadline of the customs broker exam.

Answer C compounds the mess that is Exam Question 54. It states, "The following are all actions the owner must take to continue the recordation." All of the options/multiple choices that follow should thus be in the form of an action that the owner may take. Here is answer C:

> The identity of any parent or subsidiary company or other foreign
> company under common ownership (only for those with aggregate
> ownership of more than 40% of the business entity) and common
> control which uses the trademark abroad

No action, no verb is to be found in answer C. Thus, not only is the Exam Question 54 impenetrable and confusing, but so are its answers. The Court should strike Exam Question 54 and grant credit for a correct answer to Plaintiff.

## **EXAM QUESTION 63**

This is Exam Question 63:

> A shipment has arrived on an East coast port with an arrival date of
> Monday, May 4, 2020, at 11:05AM Eastern Time (ET). The error-
> free entry summary, with payment, is submitted at the arrival port

on Thursday May 7, 2020, at 16:40PM ET. What is the
presentation date and time for non-opening moment quota
purposes?

    A. Monday, May 4, 2020 – 11:05AM ET
    B. Tuesday, May 5, 2020 – 08:00AM ET
    C. Thursday, May 7, 2020 – 16:40PM ET
    D. Friday May, 8, 2020 – 08:30AM ET
    E. Friday May, 8, 2020 – 09:00AM ET

CBP official answer is D.  Here is how it defends that answer:

> Because the Facts of Question 63 show that the entry summary and
> payment were provided to the port of arrival at "16:40PM ET" or
> 4:40 PM ET ***without stipulating authorization for overtime
> services***, 19 CFR 141.62(b) becomes relevant. That subsection
> provides that the time of filing of entry and entry summary shall be
> "normal business hours."

(emphasis added). While it is true that Exam Question 63 did not stipulate that overtime services

***were authorized***, it also did not stipulate that overtime services ***had not been authorized***. If

overtime services had been authorized, answer C is correct.  If they had not been authorized,

answer D (CBP's answer) is correct. CBP could have cured this ambiguity by making its

preferred stipulation clear.  CBP did not cure the ambiguity and left exam taker in a lurch.  CBP

was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Given CBP's ambiguity, Exam Question 63 should not be counted against Plaintiff's final exam

score.

## **EXAM QUESTION  78**

    This is Exam Question 78: Under which scenario can a broker bill a freight forwarder

(FF) for Customs duties without sending a copy to the importer?

    A.  The broker obtains a Sub-Power of Attorney (POA) from
        the FF, on behalf of the importer, and a valid POA from the
        importer.

B. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions.

C. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions and the broker transmits directly to the FF, a true copy of the brokerage charges for the brokerage fees and charges collected by or through the forwarder.

D. The broker is provided a POA from the FF, on behalf of the importer, to handle the importer's Customs transactions.

E. The broker is provided the importer's signed waiver of the requirement to receive a true copy of the broker charges, when fees and charges are to be collected by or through the FF, and the importer is told in advance the name of the broker selected by the FF to handle their Customs transactions.

Plaintiff answered D, while CBP claimed the correct answer is E. As Plaintiff argued at the administrative level, Exam Question 78 does not make sense and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The Court should disqualify Exam Question 78 and grant credit to Plaintiff for a correct answer.

The question posits a situation where a broker bills a freight forwarder for Customs duties. The problem is that a broker cannot bill a freight forwarder, importer, or anyone else for Customs duties. Ever. Only CBP bills importers for customs duties. While brokers are often retained to collect funds from an importer (perhaps through a freight forwarder as permitted by 19 CFR 111.36(a)), only CBP, at the direction of the U.S. Treasury Department, is allowed to bill and collect customs duties. A broker may be permitted to bill an importer or freight forwarder (again, upon compliance of 19 CFR 111.36(a)) for its efforts in calculating and collecting the customs duties and then remitting those fees to CBP, but those duties are not for the broker's own coffers. In other words, a broker is limited to being compensated for conducting customs business, as defined in 19 CFR 111.1:

"Customs business" means those activities involving transactions with CBP concerning the entry and admissibility of merchandise,

its classification and valuation, the payment of duties, taxes, or ***other charges assessed or collected by CBP*** on merchandise by reason of its importation, and the refund, rebate, or drawback of those duties, taxes, or other charges. "Customs business" also includes the preparation, and activities relating to the preparation, of documents in any format and the electronic transmission of documents and parts of documents intended to be filed with CBP in furtherance of any other customs business activity, whether or not signed or filed by the preparer. However, "customs business" does not include the mere electronic transmission of data received for transmission to CBP and does not include a corporate compliance activity.

(emphasis added).

Plaintiff should not be required to rewrite Exam Question 78 to make it intelligible. That Plaintiff feels compelled to here offer a rewrite illustrates that Exam Question 78 is not intelligible.  Instead of the nonsensical "bill a freight forwarder (FF) for Customs duties," Exam Question 78 could have said: "collect from the freight forwarder the customs duties that the broker calculated that the importer owes to CBP and that the broker will pay on the importer's behalf to CBP." But Exam Question 78 is not written with this clarity, logic, and is not based on the duties that brokers are actually allowed to perform.

The importance of specifying that a broker collects, and does not bill, customs duties on behalf of a customs broker should be obvious to CBP. It was obvious in *HQ H318461*, a recent binding ruling from CBP on facts similar to those in Exam Question 78.  CBP takes great care (as it should have in Exam Question 78) in the binding ruling to emphasize that the broker is limited to collecting customs duties.

Exam Question 78 cannot be counted as a wrong answer against Plaintiff. Plaintiff respectfully requests full credit for a correct answer

## VI.      PRAYER/CONCLUSION

For the reasons set forth above, this Court should hold that Plaintiff achieved at passing

score on the April 27, 2022, customs broker exam.

Respectfully submitted,

/s/ Oscar Gonzalez
Oscar Gonzalez
/s/ Ruth Rodriguez
Ruth Rodriguez
Gonzalez Rolon et al LLC
2911 Turtle Creek Boulevard, Suite 300
Dallas, Texas 75219
Attorneys for Plaintiff
Brandon Chen

Dated:  April 7, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the 14,000 word limitation imposed Chambers Procedures, Rule

2(B)(1).

Respectfully submitted,

/s/ Oscar Gonzalez
Oscar Gonzalez