UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JANE A. RESTANI, JUDGE

_____
BRANDON CHEN,                                         :
                            Plaintiff,       :        Court No.  24-00208
                                         :
              v.                                              :
                                         :
UNITED STATES OF AMERICA,                      :
U.S. CUSTOMS AND BORDER PROTECTION,  :
                                         :
                        Defendants.     :
_____:

## ORDER

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's response thereto, and other papers on file, and upon due deliberation; it is hereby

**ORDERED** that plaintiff's motion be and is hereby is denied; and it is further

**ORDERED** that U.S. Customs and Border Protection's denial of plaintiff's application for a customs broker's license is sustained; and it is further

**ORDERED** that judgment is entered for the United States and the action is dismissed.

_____
JUDGE

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| BRANDON CHEN, | : | |
| Plaintiff, | : | Court No. 24-00208 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| U.S. CUSTOMS AND BORDER PROTECTION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

MARCELLA POWELL
Senior Trial Counsel

Of Counsel:
Valerie Sorenson-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: July 18, 2025

Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-9230 or 1873
Attorneys for Defendant

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 1

    A.  The Customs Broker License Examination ...................................................... 1

    B.  The Facts In This Case .................................................................................... 5

STANDARD OF REVIEW ........................................................................................ 6

ARGUMENT ............................................................................................................. 8

    I.       PLAINTIFF PRESENTS NEW MATERIAL AND ARGUMENTS IN ITS MOTION THAT WERE NOT SUBMITTED WITH HIS ADMINISTRATIVE APPEALS, AND THIS NEW MATERIAL SHOULD BE DISREGARDED .............................. 8

    II.     CBP'S DECISION DENYING CREDIT FOR THE CONTESTED QUESTIONS WAS REASONABLE AND SUPPORTED BY SUBTANTIAL EVIDENCE ......... 9

Question No. 14 ......................................................................................................... 9

Question No. 29 ....................................................................................................... 11

Question No. 36 ....................................................................................................... 14

Question No. 38 ....................................................................................................... 16

Question No. 39 ....................................................................................................... 19

Question No. 42 ....................................................................................................... 21

Question No. 44 ....................................................................................................... 21

Question No. 54 ....................................................................................................... 27

Question No. 63 ....................................................................................................... 25

Question No. 78 ....................................................................................................... 33

CONCLUSION ......................................................................................................... 35

i

# TABLE OF AUTHORITIES

**Cases**

*Avenues in Leather, Inc. v. United States*,
423 F.3d 1326 (Fed. Cir. 2005)............................................................................. 16, 19

*Avenues in Leather*, Inc. v. United States
178 F.3d 1241 (Fed. Cir.1999)............................................................................ 16, 19

*BASF Corp. v. United States*,
482 F.3d 1324 (Fed. Cir. 2007)................................................................................. 16

*Bell v. United States*,
839 F. Supp. 874 (Ct. Int'l Trade 1993) .................................................................... 9

*Chae v. Yellen*,
579 F. Supp. 3d 1343 (Ct. Int'l Trade 2022),
*aff'd*, 2023 WL 307285 (Fed. cir. 2023) ........................................................... 7, 8, 24

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938).................................................................................................... 5

*Depersia v. United States*,
637 F. Supp. 2d 1244 (Ct. Int'l Trade 2009) .................................................... 27, 33

*Di Iorio v. United States*,
14 Ct. Int'l Trade 746 (1990)............................................................................*passim*

*Dunn-Heiser v. United States*,
29 Ct. Int'l Trade 552 (2005)........................................................................ 1, 7, 8, 27

*Fusco v. U.S. Treasury Dep't*,
695 F. Supp. 1189 (Ct. Int'l Trade 1988) .................................................................. 5

*Harak v. United States*,
30 Ct. Int'l Trade 908 (2006).................................................................................... 7

*JVC Co. of America, Div. of JVC Corp. v. United States*,
234 F.3d 1348 (Fed. Cir. 2000)................................................................................ 17

*Kennv v. Snow*,
401 F.3d 1359 (Fed. Cir. 2005).................................................................................. 7

*Rudloff v. United States*,
19 Ct. Int'l Trade 1072 (1995) ................................................................ 8, 9, 30

*Rudloff v. United States*,
19 Ct. Int'l Trade 1245 (1995)*,*
*aff'd,* 108 F.3d 1391 (Fed. Cir. 1997) ..................................................... 6, 13, 24

*Sports Graphics, Inc. v. United States*,
24 F.3d 1390 (Fed. Cir. 1994) .......................................................................... 16

*Stoute-Francois v. Yellen*,
766 F. Supp. 3d 1315 (2025) ................................................... 7, 9, 11, 24, 27

*Tarnove v. Bentsen*,
17 Ct. Int'l Trade 1324 (1993) ............................................................................ 7

## HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES

General Rule of Interpretation 1 ............................................................ *passim*

General Rule of Interpretation 6 ........................................................................ 14

**Chapter 3**

Heading 0302 .................................................................................................. 19, 20

**Chapter 16**

Heading 1604 .................................................................................................. 19, 20

Subheading 1604.14.1091 ...................................................................................... 19

Note 1 ............................................................................................................................ 19

**Chapter 49**

Heading 4901 .................................................................................................. 14, 15

Note 1(c) ...................................................................................................................... 15

**Chapter 85**

Subheading 8525.80.40 ............................................................................................ 22

Subheading 8525.80.4000 .............................................................................. 22, 23

**Chapter 95**

Heading 9503 .................................................................................................... 14, 15, 16

**Chapter 96**

Heading 9603 ......................................................................................................... 17, 18

Heading 9615 ......................................................................................................... 17, 18

**Chapter 98**

Subheading 9808.00.80 ......................................................................................... 9, 10, 11

Note 1 ................................................................................................................... 9, 10, 11

**Rules**

USCIT R. 56.1 .......................................................................................................... 1

**Statutes**

5 U.S.C. § 706 ......................................................................................................... 4

19 U.S.C. 1202 ........................................................................................................ 11

19 U.S.C. § 1641(a)(2) .......................................................................................... 29

19 U.S.C. § 1641(b)(2) .......................................................................................... 2

19 U.S.C. § 1641(e) ............................................................................................... 6

19 U.S.C. § 1641(e)(1) .......................................................................................... 3, 4

19 U.S.C. § 1641(e)(4) .......................................................................................... 6

19 U.S.C. § 1641(f) ............................................................................................... 2

**Regulations**

19 C.F.R. § 10.102(a) ............................................................................................ 13

19 C.F.R. § 24.3(a) ................................................................................................ 34

19 C.F.R. § 111.1 ................................................................................................... 29

19 C.F.R. § 111.11(a)(4) ....................................................................................... 34

19 C.F.R. § 111.13 ................................................................................................. 2

19 C.F.R. § 111.13(a).................................................................................................2, 3

19 C.F.R. § 111.13(e)-(f)..................................................................................................3

19 C.F.R. § 111.17.............................................................................................................4

19 C.F.R. § 111.36(a)......................................................................................................34

19 C.F.R. § 111.36(c)......................................................................................................35

19 C.F.R. § 111.36(c)(2)(i).............................................................................................35

19 C.F.R § 113.62............................................................................................................15

19 C.F.R. § 113.62(c)......................................................................................................15

19 C.F.R. § 113.62(e)......................................................................................................15

19 C.F.R. § 113.62(f)(1)..................................................................................................15

19 C.F.R. § 123.10.............................................................................................................8

19 C.F.R. § 123.10(a)....................................................................................................8, 9

19 C.F.R. § 132................................................................................................................30

19 C.F.R. § 133.2...............................................................................................28, 30, 32

19 C.F.R. § 133.2(d)(1)...................................................................................................28

19 C.F.R. § 133.2(e)........................................................................................................28

19 C.F.R. § 133.5............................................................................................................29

19 C.F.R. § 133.5(a)........................................................................................................29

19 C.F.R. § 133.5(b)........................................................................................................29

19 C.F.R. § 133.5(c)........................................................................................................24

19 C.F.R. § 133.5(d)........................................................................................................29

19 C.F.R. § 141.62...........................................................................................................31

19 C.F.R. § 141.62(b)(2)(ii)...........................................................................................26

**Other Authorities**

H318461 (Aug. 25, 2002)................................................................................................35

H258556 (Sept. 6, 2017) ....................................................................................................................

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JANE A. RESTANI, JUDGE

|                                                          |   |                      |
|----------------------------------------------------------|---|----------------------|
| BRANDON CHEN,                                            | : |                      |
|                                           Plaintiff,     | : | Court No.  24-00208  |
|                                                          | : |                      |
|                                v.                        | : |                      |
|                                                          | : |                      |
| UNITED STATES OF AMERICA,                                | : |                      |
| U.S. CUSTOMS AND BORDER PROTECTION,                      | : |                      |
|                                                          | : |                      |
|                                        Defendants.       | : |                      |
|                                                          | : |                      |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Defendants, United States of America and U.S. Customs and Border Protection (collectively, Government), pursuant to Rule 56.1 of the Rules of this Court, submit this memorandum in opposition to plaintiff's Motion for Judgment on the Agency Record.

## INTRODUCTION

Plaintiff, Brandon Chen, challenges U.S. Customs and Border Protection's (CBP or Customs) denial of credit for eleven (11) questions on the April 2022 Customs Brokers License Examination (CBLE).  As a result of the denial of credit, plaintiff failed to attain a passing score on the examination, which resulted in CBP's denial of his application to obtain a broker's license.

## BACKGROUND

A.  The Customs Broker License Examination

"Customs brokers help importers and exporters navigate the labyrinthine of federal laws governing the movement of merchandise into and out of the customs territory of the United States." *Dunn-Heiser v. United States*, 29 Ct. Int'l Trade 552, 553 (2005).  To become a customs

broker, applicants must obtain a customs broker's license by successfully completing a written examination that is administered by Customs. 19 U.S.C. § 1641(b)(2)[1]; *see also* 19 U.S.C. § 1641(f) (authorizing the promulgation of regulations relating to customs brokers); 19 C.F.R. § 111.13 (setting forth regulations governing the written examination). The exam is designed "to determine the applicant's knowledge of customs and related laws, regulations and procedures," as well as "all other appropriate matters to render valuable service to importers and exporters." 19 U.S.C. § 1641(b)(2); 19 C.F.R. § 111.13(a).

The Customs Broker License Examination (CBLE) is administered annually in April and October, and the exam consists of 80 multiple-choice questions. On the cover of each exam, applicants are instructed that "**Each question has a single best answer**." (emphasis in original). The applicants are also instructed that they are responsible for having the following references with them during the exam:

- Harmonized Tariff Schedule of the United States (2021 Basic Edition, No Supplements) (HTSUS)

- Title 19, Code of Federal Regulations (2021 Revised as of April 1, 2021) (Parts 1 to 140)

- ACE Entry Summary Instructions Version 2.4a (ACE ES)

- Right to Make Entry (RTME) Directive 3530-002A

---

[1] 19 U.S.C. § 1641(b)(2) provides:

Before granting the license, [Customs] may require an applicant to show any facts deemed necessary to establish that the applicant is of good moral character and qualified to render valuable service to others in the conduct of customs business. In assessing the qualifications of an applicant, [Customs] may conduct an examination to determine the applicant's knowledge of customs and related laws, regulations and procedures, bookkeeping, accounting, and all other appropriate matters.

- ACE Entry Summary Business Rules and Process Document (Trade-External 10.50, March 2021 (Chapters 1 through 25) (ACE BRPD)

A.R. 001.

Applicants must receive a passing score of 75 percent or higher to obtain their license. 19 C.F.R. § 111.11(a)(4). If an examinee fails to attain a passing grade on the examination, he or she may retake the exam or appeal the result with CBP. *Id.* § 111.13(e)-(f). There is accordingly a two-step appeals process within the agency. An examinee first submits an appeal to the Broker Management Branch (BMB), Trade Policy & Programs, Office of Trade. The second appeal is handled by Regulations and Rulings (R&R). R&R communicates its decision to the BMB. The BMB then recalculates examinees' scores based on the total number of correct answers. Examinees will be deemed to have passed the examination if the recalculated score represents at least 75% of the total number of questions that were not discarded.

Following this exhaustion of the administrative process, the applicant can file an appeal of the Executive Assistant Commissioner's decision to this Court. 19 U.S.C. § 1641(e)(1) ("[An] applicant . . . may appeal . . . by filing in the Court of International Trade, within 60 days after the issuance of the decision or order, a written petition requesting that the decision or order be modified or set aside in whole or in part.").

B. The Facts In This Case

Plaintiff took the CBLE on April 27, 2022 in Jersey City, New Jersey. Admin. Rec. (A.R.) at 001-039. The exam consisted of 80 questions. *Id.* By letter dated May 10, 2022, Customs notified plaintiff that he had obtained a score of 66.25 percent on the exam, which is less than the required 75 percent needed to pass the exam. A.R. 040-042. On July 7, 2022, plaintiff then sought administrative review from Customs' Broker Management Branch, initially challenging question Nos. 13, 14, 29, 33, 38, 39, 42, 44, 45, 46, 54, 63, 64, 72, and 78. A.R.

043-064.  By letter dated March 3, 2023, Customs informed plaintiff that his score was

sustained.  A.R. 066-067.  On April 30. 2023, plaintiff sought a second administrative review

again arguing that he should have received credit for questions nos. 13, 14, 29, 33, 36, 38, 39, 42,

44, 45, 46, 54, 63, 72 and 78.  A.R. 068-088.  In a letter dated October 3, 2024, CBP informed

plaintiff that CBP had granted credit for five questions that he had challenged (nos. 13, 33, 45,

64, and 72), but did not grant additional credit for the remaining eleven (11) questions (nos. 14,

29, 36, 38 39, 42, 44, 46, 54, 63, and 78).  *Id.*  The letter explained that plaintiff's adjusted score

was 72.50 percent, still below the required 75 percent to pass the test.  *Id.*  The letter also

informed plaintiff that he could appeal Customs' decision by filing an action in this Court

pursuant to 19 U.S.C. § 1641(e)(l) and 19 C.F.R. § 111.17.  *Id.*

On November 25, 2024, plaintiff commenced this action challenging CBP's decision

denying credit for questions nos. 14, 29, 36, 38, 39, 42, 44, 46[2], 54, 63, and 78.  For the reasons

stated below, the Court should sustain CBP's denial of plaintiff's application for a license, enter

judgment for the Government, and dismiss this action.

## STANDARD OF REVIEW

The denial of a Customs broker's license can be overturned only if that decision was

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. §

706.  The U.S. Court of Appeals for the Federal Circuit has observed that:

> Underpinning a decision to deny a license arising from an
> applicant's failure to pass the licensing examination are factual
> determinations grounded in examination administration issues -
> such as, in the present case, the allowance of credit for answers
> other than the official answer- which are subject to limited
> judicial review because '[t]he findings of the Secretary as to the
> facts, if supported by substantial evidence, shall be conclusive.'

---

[2] CBP has decided to grant plaintiff credit for Question No. 46.

*Kennv v. Snow*, 401 F.3d 1359, 1361 (Fed. Cir. 2005). *See also Dunn-Heiser v. United States*, 374 F. Supp. 2d 1276, 1279-80 (Ct. Int'l Trade 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kenny v. Snow*, 401 F.3d at 1361 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tarnove v. Bentsen*, 17 Ct. Int'l Trade 1324, 1324 (1993); *Fusco v. U.S. Treasury Dep't*, 695 F. Supp. 1189 (Ct. Int'l Trade 1988).

Moreover, the agency "is entitled to certain latitude in the design and scoring of customs broker license exams." *Dunn-Heiser*, 374 F. Supp. 2d at 1280. "[T]he substantial evidence standard does not require that Customs draft perfect questions." *Chae v. Yellen*, 579 F. Supp. 3d 1343, 1351 (Ct. Int'l Trade 2022), *aff'd*, 2023 WL 307285 (Fed. Cir. Apr. 25, 2023). "Although this Court reviews each exam question, '[p]arties should not conclude from the court's detailed examination of the test answers that the court is some kind of final reviewer of the [exam].'" *Di Iorio v. United States,* 14 Ct. Int'l Trade 746, 752 (1990). "Instead, the court determines whether the question provided the applicant with sufficient information to select the correct answer. *Stoute-Francois v. Yellen*, 766 F. Supp. 3d 1315, 1320 (Ct. In'l Trade 2025) (citing *Di Iorio v. United States*, 14 Ct. Int'l Trade 746, 748-49 (1990)).

As this Court has held previously, it "will not substitute its own judgment on the merits of the Customs examination, but will examine decisions made in connection therewith on a reasonableness standard." *Id.* at 747; *see also Harak v. United States*, 30 Ct. Int'l Trade 908, 912 (2006). Consequently, the Court does not serve as a final reviewer of the Customs broker license exam and does not substitute its judgment for that of the agency and agency officials. *Dunn-Heiser*, 374 F. Supp. 2d at 1279-80; *Di Iorio,* 14 Ct. Int'l Trade at 747 (1990).

> Rather than substitute its own judgment on the merits of the
> Customs examination during judicial inquiry into the agency's

> formulation and grading of standardized examination questions, this
> Court has held that it will examine decisions made in connection
> therewith on a reasonableness standard. Judicial intrusion into
> agency formulation and grading of standardized examinations
> should be limited in scope. Accordingly, this court will grant some
> deference to the administrative determination as it relates to the
> appropriateness of various questions and answers selected on the
> Customs broker's licensing examination.

*Di Iorio*, 14 Ct. Int'l Trade at 747. The Court's review is thus limited in scope. *Dunn-Heiser*,

374 F. Supp. 2d at 1280; *Di Iorio*, 14 Ct. Int'l Trade at 747; *Rudloff v. United States*, 19 Ct. Int'l

Trade 1245, 1247 (1995), *aff'd,* 108 F.3d 1392 (Fed. Cir. 1997).

## **ARGUMENT**

I.    **PLAINTIFF PRESENTS NEW MATERIAL AND ARGUMENTS IN ITS
MOTION THAT WERE NOT SUBMITTED WITH HIS ADMINISTRATIVE
APPEALS, AND THIS NEW MATERIAL SHOULD BE DISREGARDED.**

In its moving brief, plaintiff presents evidence to the Court that it did not submit to CBP

in connection with his two administrative appeals. *See* Pl.'s Br. at 4-10. Plaintiff also presents

several new arguments to support his challenges to Question Nos. 29, 38, 42, 63, and 78 that

were not raised in his administrative appeals before CBP. Pursuant to 19 U.S.C. § 1641(e)(4)[3],

leave of the Court must be sought to present additional evidence and, if the standards of the

statute are met, the Court may order that the additional evidence may be taken before the hearing

---

[3] 19 U.S.C. § 1641(e) states:

If any party applies to the court for leave to present additional evidence
and the court is satisfied that the additional evidence is material and that
reasonable grounds existed for the failure to present the evidence in the
proceedings before the hearing officer, the court may order the additional
evidence to be taken before the hearing officer and to be presented in a
manner and upon the terms and conditions prescribed by the court. The
Secretary may modify the findings of facts on the basis of the additional
evidence presented.

officer. 19 U.S.C. § 1641(e)(4); *Rudloff v. United States*, 19 Ct. Int'l Trade 1072 (1995); *Bell v. United States*, 839 F. Supp. 874 (Ct. Int'l Trade 1993). Plaintiff has not sought leave to present his new evidence and arguments in accordance with the procedures of the statute. Accordingly, we request that the Court disregard the new evidence and arguments that plaintiff presents in support of his challenge to Question Nos. 29, 38, 42, 63 and 78.

## II.    CBP'S DECISION DENYING CREDIT FOR THE CONTESTED QUESTIONS WAS REASONABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff contends that CBP's decision to deny his appeal with regard to questions Nos. 14, 29, 36, 38, 39, 42, 44, 54, 63 and 78 was not supported by substantial evidence. Plaintiff is incorrect as to all ten challenged questions because the evidence in the administrative record establishes that CBP's decision to deny plaintiff's appeal with regard to those questions was reasonable and supported by substantial evidence.

The following is a discussion of the contested questions:

### Question No. 14

For General Order (GO) merchandise regularly landed but not covered by a permit for its release is authorized to remain at the place of unlading until the 15th calendar day after landing. If an entry has not been made for the merchandise, the owner, operator of an imported vehicle or agent must notify CBP no later than 20 calendar days after landing, a monetary penalty will be assessed. What is the greatest penalty amount per bill of lading that can be assessed?

     **A. $1,000.00**

     B. $1,500.00

     C. $2,000.00

     D. $3,000.00

     E. $5,000.00

In scoring the exam, CBP designated the correct answer as (A), "$1,000.00." A.R. 008, A036. Plaintiff selected answer choice (E), "$5,000.00." A.R. 042. For its answer choice, CBP relied on 19 C.F.R. § 123.10, which sets forth the requirements and conditions for General Order (GO) merchandise. A.R. 90. Section 123.10(a) states that:

> (a) Any merchandise or baggage regularly landed but not covered by a permit for its release shall be allowed to remain at the place of unlading until the fifteenth calendar day after landing. No later than 20 calendar days after landing, the owner or operator of the vehicle or the agent thereof shall notify Customs of any such merchandise or baggage for which entry has not been made. Such notification shall be provided in writing or by any appropriate Customs-authorized electronic data interchange system. **Failure to provide such notification may result in assessment of a monetary penalty of up to $1,000 per bill of lading against the owner or operator of the vehicle or the agent thereof.** If the value of the merchandise on the bill is less than $1,000, the penalty shall be equal to the value of such merchandise.

(emphasis added). By its plain language, section 123.10(a) states that the failure to notify Customs of the merchandise or baggage for which entry has not been made "may result in the assessment of a monetary penalty of up to $1,000 per bill of lading." Answer choice (A) is the correct answer.

Plaintiff argues that Question No. 14 is flawed. According to plaintiff, CBP incorrectly based "its official answer to Exam Question 14 on 19 C.F.R. §123.10(a) because that regulation is discretionary and CBP's wording in Exam Question 14 does not permit any discretion, i.e., the monetary penalty will be assessed." Pl.'s Br. 19-20. Plaintiff concludes that CBP is obligated to draft "perfect" examination questions and claims that "if the premise in a question or answer is flawed, its conclusion cannot stand." *Id*. at 20. Plaintiff's argument is incorrect.

First, Question No. 14 is well-drafted as it provides sufficient information for plaintiff to identify the best answer choice. Indeed, the question closely tracks the language of section

8

123.10(a), and then asks the test-taker to select the answer choice that reflects the "greatest" amount of monetary penalty that "can" be assessed per bill of lading. The correct answer is stated unambiguously in the regulation, $1,000. The question does not ask the test-taker to identify a "mandatory" penalty that "will be assessed."

Second, plaintiff's argument that CBP is obligated to draft "perfect" examination questions is not supported by the law. CBP is afforded latitude in the formulation of the CBLE. *Chae*, 579 F. Supp. 3d at 1351. Perfection is not required. *Id.* Additionally, a question "will not fail to meet the substantial evidence standard merely because it may be susceptib[le] of different meanings." *Stoute-Francois*, 766 F. Supp. 3d at 1320.

Accordingly, CBP's decision to deny plaintiff credit for this Question No. 14 was reasonable and supported by substantial evidence.

### Question No. 29

What type of entry is required for goods brought into the customs territory of the United States by the National Aeronautics and Space Administration (NASA) from space or from a foreign country as part of an international program of NASA?

A. 01 - Formal Entry

B. 11 - Informal Entry

C. 51 - Defense Contract Management Agency (DCMA) is the importer of record and filer of the entry

D. 52 - Any U.S. Federal Government agency (other than DCMA) is the importer of record

**E. Entry is not required**

In scoring the exam, CBP designated the correct answer as (E), "Entry is not required." A.R. 013, 037. This answer reflects the legal parameters of subheading 9808.00.80, Harmonized Tariff Schedule of the United States (HTSUS), and Note 1 of Chapter 98, Subchapter VIII

9

("Importations of the United States Government"). Subheading 9808.00.80, HTSUS, provides as follows:

> Articles for the National Aeronautics and Space Administration and articles imported to implement international programs between the National Aeronautics and Space Administration and foreign entities, including launch services agreements:
>
>> Goods certified by it to the Commissioner of Customs to be imported for the use of the National Aeronautics and Space Administration or for the implementation of an international program of the National Aeronautics and Space Administration, including articles to be launched into space and parts thereof, ground support equipment and uniquely associated equipment for use in connection with an international program of the National Aeronautics and Space Administration, including launch services agreements...................................................................... free

Note 1 of Chapter 98, Subchapter VIII, HTSUS, states:

> With respect to subheading 9808.00.80, goods brought into the customs territory of the United States by the National Aeronautics and Space Administration from space or from a foreign country as part of an international program of the National Aeronautics and Space Administration shall not be considered an importation, and an entry of such materials shall not be required.

Subheading 9808.00.80, HTSUS, covers items brought into the customs territory of the United States by NASA or from a foreign country as part of an international program of NASA. Pursuant to Note 1, such items are not considered importations and, therefore, an entry is not required. Thus, CBP's answer choice (E) is reasonable and supported by substantial evidence.

Plaintiff selected answer choice (A), "01 – Formal Entry." A.R. 042. In challenging the correct answer, plaintiff argues that Question No. 29 is ambiguous. Pl. Br. at 17. Specifically, plaintiff argues the "the regulations and the HTSUS are unclear about whether an entry is required for NASA importations from space." *Id*. According to plaintiff, "duty-free entry is not

the same as no entry required or no importation made."  "A duty-free entry assumes that there

has been an importation and an entry, but with an applicable duty rate of zero." *Id*.  Relying on

19 C.F.R. § 10.102(a), plaintiff argues that the regulation provides "duty-free entry" for several

subheadings including subheading 9808.00.80, HTSUS.  *Id*.  Plaintiff's argument is incorrect for

several reasons.

The correct answer to Question No. 29 can be found in subheading 9808.00.80, HTSUS,

and Note 1, which, together, state that entry "shall not be required" "[w]ith respect to subheading

9808.00.80, goods brought into the customs territory of the United States by the National

Aeronautics and Space Administration from space or from a foreign country as part of an

international program of the National Aeronautics and Space Administration."  Therefore, it is

unnecessary to resort to any additional regulations.  Plaintiff's reliance on section 10.102(a) is

incorrect as that regulation governs the invoice and declaration requirements for goods entered

duty-free or exempt from duty.  The regulation states, in pertinent part:

> **§ 10.102 Duty-free entries**
>
> (a) ***Invoice or declaration.***  No invoice or other declaration of the
> shipper shall be required for shipments expressly exempt from
> duty as provided in subheadings 9808.00.10, 9808.00.20,
> 9808.00.30, 9808.00.40, 9808.00.50, 9808.00.60, 9808.00.70, or
> other subheadings in the Harmonized Tariff Schedule of the United
> States (HTSUS) (19 U.S.C. 1202) providing for free entry.

Section 10.102(a) eliminates the requirement to provide an invoice or shipper's

declaration for certain goods that are duty-free or exempt from duty.  The regulation does not

prescribe the "type of entry" for goods brought into the customs territory from space by NASA

or a foreign country, nor does it impose entry requirements distinct from those required by Note

1 and subheading 9808.00.80, HTSUS.

11

Plaintiff also presents a new argument claiming that the correct answer to Question No. 29 could only be ascertained by reliance on his "common knowledge" of the historical "declaration" that NASA's Apollo 11 crew was required to file upon their return from the moon.[4]  Plaintiff concludes that "[b]ecause history famously records this customs entry, only absolutely clear authority to the contrary could convince an exam-taker that no entry whatsoever is required for NASA's importations from space."  Pl.'s Br. at 4–5.  Plaintiff is incorrect.  Note 1 is controlling, and it cannot be supplanted by a historical NASA document.  Moreover, plaintiff cannot unilaterally rewrite the question by relying on facts that are not contained in the question.  *See, e.g., Di Iorio*, 14 Ct. Int'l Trade at 751 ("Plaintiff cannot unilaterally rewrite the question.").  Answer (E) is the correct answer.  CBP's decision to deny credit for Question No. 29 is reasonable and supported by substantial evidence.

### Question No. 36

A basic importation and entry bond must contain all of the following bond conditions EXCEPT:

    A.  If access to the customs security areas at airports is desired, the principal (including its employees, agents, and contractors) agrees to comply with the CBP regulations in 19 CFR, Chapter 1, applicable to customs security areas at airports. If the principal defaults, the obligors (principal and surety, jointly and severally) agree to pay liquidated damages of $1,000 for each default or such other amount as may be authorized by law or regulation.

    **B.  The principal agrees to keep safe any merchandise placed in its custody including, when approved by CBP, repack and transfer such merchandise when necessary for its safety or preservation.**

    C.  If merchandise is released conditionally to the principal before all required documents or other evidence is produced, the principal agrees to furnish CBP with any document or evidence as required by law or regulation, and within

---

[4] The Government has asked the Court to disregard the new argument presented by plaintiff.  In the event, the Court considers the information, we have provided a response to plaintiff's argument.

the time specified by law or regulations.

D. If merchandise is released conditionally to the principal before its right to admission into the United States is determined, the principal, after notification, agrees to mark, clean, fumigate, destroy, export, or do any other thing to the merchandise in order to comply with the law and regulations governing its admission into the United States with the time period set in the notification.

E. If the principal obtains permission to have any merchandise examined elsewhere than at a wharf or other place in charge of a CBP officer, the principal agrees to hold the merchandise at the place of examination until the merchandise is properly released.

In scoring the exam, CBP designated the correct answer as (B): "The principal agrees to keep safe any merchandise placed in custody including, when approved by CBP, repack and transfer such merchandise when necessary for its safety or preservation."  A.R. 015, 037.  This answer is consistent with 19 C.F.R § 113.62.  Section 113.62 sets forth the conditions that must be included in a basic importation and entry bond, and those conditions are set forth *verbatim* in answer choices (A), (C), (D), and (E).  Specifically, the information contained in answer (A) corresponds to section 113.62(i); answer choice (C) corresponds to section 113.62(c); answer choice (D) corresponds to section 113.62(e); and answer choice (E) corresponds to section 113.62(f)(1).  A.R. at 195.  However, the regulation does not require the information set forth in answer choice (B), which is the correct answer to Question No. 36.  A.R. 105.

Plaintiff does not dispute that answer choice (B) is correct, nor does he offer any support for the answer choice that he selected.  A.R. 042.  Instead, plaintiff argues that Question No. 36 is "too long, too dense, too unwieldy and too confusing to be considered a fair exam question and should be stricken . . ."  *Id*. at 20.  Plaintiff's claims are without support.  Question No. 36 consists of a single sentence, and the answer choices closely track the language of section 113.62.  Consequently, the question "reasonably tests 'an applicant's knowledge of customs and

13

related laws, regulations and procedures." *Rudloff*, 19 Ct. Int'l Trade at 1248.  Accordingly,

CBP's decision to deny plaintiff credit for Question No. 36 was reasonable and supported by

substantial evidence.

**Question No. 38**

What is the CLASSIFICATION of a book of crossword puzzles? The book measures 6 inches (in) by 9 in, is softcover, and contains 75 pages of pre-printed crossword puzzles labeled as appropriate for adults.

    A.  4901.99.0093
    B.  4901.99.0092
    C.  4903.00.0000
    **D.  9503.00.0090**
    E.  9503.00.0013

In scoring the exam, CBP's designated the correct answer as (D) "9503.00.0090."  A.R.

016, 037.  Question No. 38 seeks the proper tariff classification of a "book of crossword puzzles"

that measures 6 inches (in) by 9 in, is softcover, and contains 75 pages of pre-printed crossword

puzzles labeled as appropriate for adults.  The correct answer to Question No. 38 is achieved by

performing a classification analysis to identify the correct HTSUS provision.

Tariff classification is governed by the General Rules of Interpretation (GRIs), which

must be applied in numerical order.  *BASF Corp. v. United States*, 482 F.3d 1324, 1326 (Fed.

Cir. 2007).  GRI 1 provides that "classification shall be determined according to the terms of the

headings and any relative section or chapter notes."  The HTSUS section and chapter notes "are

not optional interpretive rules," but instead have the force of statutory law.  *Avenues in Leather,*

*Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005).  GRI 6 requires that the

classification of goods in the subheadings of headings shall be determined according to the terms

of those subheadings, any related subheading notes and *mutatis mutandis*, to the GRIs.

14

Pursuant to GRI 1, the terms of the headings together with any chapter or section notes are paramount. Here, the competing headings are 4901 and 9503, HTSUS. Heading 4901, HTSUS, covers "[p]rinted books, brochures, leaflets and similar printed material, whether or not in single sheets." Heading 9503, HTSUS, covers "[t]ricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."

There is also a chapter note relevant to the analysis, Note 1(c) of Chapter 49, HTSUS, which provides as follows:

> 1. – This Chapter does not cover:
>
> "(c) Playing cards or other goods of Chapter 95;"

Chapter Note 1(c) excludes playing cards and other goods classifiable in Chapter 95 from classification in any heading of Chapter 49, including heading 4901. Thus, the first step in the classification analysis is to determine whether the book of crossword puzzles is classifiable in heading 9503, which is a heading of Chapter 95. A.R. 111.

Heading 9503, HTSUS, covers six (6) distinct categories of merchandise with each category separated by a semicolon. The relevant portion of the heading, "puzzles of all kinds," is an *eo nomine* term. An *eo nomine* term includes all forms of the named article. *See JVC Co. of America, Div. of JVC Corp. v. United States*, 234 F.3d 1348 (Fed. Cir. 2000). Thus, "puzzles of all kinds" encompasses all forms of puzzles, including crossword puzzles. Because the book of crossword puzzles is classifiable in heading 9503, HTSUS, pursuant to Note 1, it cannot be classified in heading 4901, HTSUS. CBP's decision to deny credit for Question No. 38 was reasonable and supported by substantial evidence. A.R. 111.

Plaintiff selected (A) "4901.99.0093." A.R. 042. In challenging the correct answer, plaintiff argues that the "book of crossword puzzles" cannot be classified in heading 9503, HTSUS. According to plaintiff, heading 9503, HTSUS, should be interpreted by applying the doctrine of *ejusdem generis*. Pl.'s Br. at 4. According to plaintiff, the dispositive question is "whether a book of crossword puzzles is of the same kind as the items under heading 4901 or 9503." *Id*. at 5. Plaintiff concludes that under a proper construction of heading 9503, HTSUS, the "book of crossword puzzles" "clearly and absolutely does not belong with the toys for little kids and babies of heading 9503." *Id*. To bolster its argument, plaintiff presents new evidence consisting of several screenshots, including screenshots depicting Google's search results of the terms "children's toy puzzles" and "book of crossword puzzles," and screenshots depicting the search "book of crossword puzzles" in Amazon Prime.[5] *Id.* at 4-7. Plaintiff contends that those search results establish that "[t]he phrase 'puzzles of all kinds' is limited to children's toys and, despite its terms, does not capture every puzzle." *Id.* at 9. Plaintiff's classification analysis is flawed. A.R. 054.

*Ejusdem generis* is a canon of statutory interpretation. Under the principle of *ejusdem generis*, where "a list of items is followed by a general word or phrase, the rule of *ejusdem generis* is used to determine the scope of the general word or phrase." *Avenues In Leather, Inc. v. United States*, 423 F.3d 1326, 1332 (Fed. Cir. 2005). Under that rule, "the general word or phrase is held to refer to things of the same kind as those specified*." Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1392 (Fed. Cir. 1994). "In classification cases, *ejusdem generis* requires that, for any imported merchandise to fall within the scope of the general term or phrase,

---

[5] The Government has asked the Court to disregard the new argument presented by plaintiff. In the event, the Court considers the information, we have provided a response to plaintiff's argument.

the merchandise must possess the same essential characteristics or purposes that unite the listed

exemplars preceding the general term or phrase." *Avenues In Leather*, 423 F.3d at 1332.  This

Court has made clear that it will only apply the principle of *ejusdem generis* where there is a list

of exemplars that ends with a "catch-all" term.  *See Avenues in Leather*, 178 F.3d at 1244

("similar containers" and "similar articles").

The rule of *ejusdem generis* is not applicable here.  The term "puzzles of all kinds" in

heading 9503, HTSUS, does not consist of a list of named articles followed by a general "catch-

all" term.  Moreover, nothing in the text of heading 9503, HTSUS, suggests that its scope is

limited to solely children's goods.  *See* GRI 1.  Accordingly, plaintiff's answer choice (A),

"4901.99.0093," is incorrect.

### Question No. 39

What is the CLASSIFICATION of a children's detangling hairbrush? It has a plastic
handle and features soft bristles on a sponge base. The brush can be used on wet or dry
hair and is valued at 52 cents each.

    A.  9603.29.4010
    **B.  9603.29.8010**
    C.  9603.30.6000
    D.  9603.90.8050
    E.  9615.11.3000

The correct answer to Question No. 39 is achieved by performing a classification analysis

to identify the correct HTSUS provision.  Pursuant to GRI 1, the headings together with chapter

and section notes are paramount.

In scoring the exam, CBP's designated correct answer as (B) "9603.29.8010."[6]  A.R. 016,

037.  CBP's designated answer relies on heading 9603, HTSUS, which covers:

---

[6] Subheading 9603.29.8010, HTSUS, provides for "Brooms, brushes (including brushes
constituting parts of machines, appliances or vehicles), hand-operated mechanical floor
sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush

> Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush making; paint pads and rollers; squeegees (other than roller squeegees)

Plaintiff selected answer choice (E) "9615.11.3000."[7]  A.R. 042.  Plaintiff's selected answer relies on heading 9615, HTSUS, which covers:

> Combs, hair-slides and the like; hairpins, curling pins, curling grips, hair-curlers and the like, other than those of heading 8516, and parts thereof

As CBP correctly stated, the proper classification of the "children's detangling brush" can be achieved through GRI 1.  A.R. 0132-0133.  The relevant portion of heading 9603, HTSUS, provides for "Brooms, brushes (including brushes constituting parts of machines, appliances or vehicles), hand-operated mechanical floor sweepers, not motorized, mops and feather dusters; prepared knots and tufts for broom or brush making."  The term "brushes" is an *eo nomine* term that covers all forms of the article or all forms of brushes, including a "children's detangling hairbrush."  Therefore, answer choice (B) is correct.  CBP's decision to deny credit for Question No. 39 is reasonable and supported by substantial evidence.

Plaintiff argues that heading 9603, HTSUS, is not the correct heading because it only covers goods that "deal with industrial cleaning machines and tools."  Pl.'s Br. at 11.  According to plaintiff, the children's detangling hairbrush is classifiable in heading 9615, HTSUS, because it "is a tool used on a person's hair, a small person, but still a person.  It is very much like a

---

making; paint pads and rollers; squeegees (other than roller squeegees):  Toothbrushes, shaving brushes, hair brushes, nail brushes, eyelash brushes and other toilet brushes or use on the person, including such brushes constituting parts of appliances:  Other: Valued over 40¢ each."

[7] Combs, hair-slides and the like; hairpins, curling pins, curling grips, hair-curlers and the like, other than those of heading 8516, and parts thereof: Combs, hair-slides and the like: Of hard rubber or plastics: Combs: Valued over $4.50 per gross: Other."

comb, hair-slides and the like; hairpins, curling pins, and hair-curlers of Heading 9615." Pl.'s

Br. at 12. Plaintiff's classification analysis disregards GRI 1. Heading 9603, HTSUS, does not

include any terms that limit its scope to industrial cleaning machines and tools. Indeed, the term

"brushes" does not have any qualifications. As for heading 9615, HTSUS, there is no mention of

"brushes" in the heading, and a "comb" is a distinctly different article than a "brush." A "brush"

is defined as

1. an implement with a handle, consisting of bristles, hair, or wire set into
   a block, used for cleaning or scrubbing, applying a liquid or powder to
   a surface, arranging the hair, or other purposes.

Merriam-Webster, https://www.merriam-webster.com/dictionary/brush (last visited on July 18,

2025). A "comb" is defined as "1a: a toothed instrument used especially for adjusting, cleaning,

or confining hair." Merriam-Webster, https://www.merriam-webster.com/dictionary/comb (last

visited on July 18, 2025). Therefore, based on GRI 1, the children's detangling "brush" cannot

be classified in heading 9615, HTSUS. CBP's decision to deny plaintiff credit for this question

was reasonable and supported by substantial evidence.

### Question No. 42

Best Seafood Import Company is entering a product called "Bonito del Norte" from
Spain. The fish is in pieces, packaged in glass jars and is invoiced as "Bonito del Norte,
White Tuna in Olive Oil." The documents provided include National Oceanic and
Atmospheric Administration (NOAA) Form 370 "Fisheries Certificate of Origin", which
lists "Thunnus Alalunga in Oil" under the "Description of Fish" section, and a Captain's
Statement stating that no dolphins were harmed during the catch. What is the
CLASSIFICATION of this product?

    A. 0302.31.0000
    **B. 1604.14.1091**
    C. 1604.14.2259
    D. 1604.14.7000
    E. 1604.19.2500

Question No. 42 seeks the proper classification of fish in pieces, in olive oil packaged in glass jars.  The correct answer to Question No. 39 is achieved by performing a classification analysis to identify the correct HTSUS provision.  Pursuant to GRI 1, the terms of the headings together with any chapter or section notes are paramount.  There are two headings reflected in the possible answer choices—headings 0302 and 1604.

Heading 0302, HTSUS, covers:

> Fish, fresh or chilled, excluding fish fillets and other fish meat of heading 0304;

Heading 1604, HTSUS, covers:

> Prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs

Note 1 to Chapter 16 states

> For purposes of this chapter, the term 'in oil' means packed in oil or fat, or in added oil or fat and other substances, whether such oil or fat was introduced at the time of packing or prior thereto.

In scoring the exam, CBP designated the correct answer as (B) "1604.14.1091."[8]  A.R. 018, 037.  Plaintiff selected answer choice (A) "0302.31.0000."  A.R. 042.

Classification under headings 0302 ("Fish, fresh or chilled") and 1604 ("Prepared or preserved fish"), HTSUS, depends on the condition of the fish at the time of importation into the United States.  As CBP correctly noted, "[t]he product at issue is tuna pieces in oil, and thus would be considered a 'prepared fish,' not 'fresh or chilled,' under heading 0302, HTSUS."

---

[8] Subheading 1604.14.1091 provides for "Prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs: Fish, whole or in pieces, but not minced:  Tunas, skipjack tuna and bonito (Sarda spp.): Tunas and skipjack: In airtight containers: In oil."

Plaintiff has not proffered a GRI 1 analysis of the relevant headings to support his answer choice to Question No. 42. Rather, plaintiff presents a new argument based on the explanation provided in the administrative record for denying credit for the question.[9] Specifically, plaintiff questions CBP's use of the phrase "prepared fish" (A.R. 136, 199) because it does not appear in the heading 0302, HTSUS, and is not defined. Pl.'s Br. at 13. CBP's complete explanation states:

> <u>Examinee Decision</u>: Examinee Chen believes that Answer Choice A is correct. Answer A is incorrect because subheading 0302.31.0000, HTSUSA, provides for "Fish, fresh or chilled, excluding fish fillets and other fish meat of heading 0304: Tunas (of the genus Thunnus), skipjack tuna (striped bellied bonito) (Katsuwonus pelamis), excluding edible fish offal of subheadings 0302.91 to 0302.99: Albacore or long finned tunas (Thunnus alalunga)." The product as issue here is tuna pieces in oil, and thus would be considered a "prepared fish," not "fresh or chilled," under heading 0302, HTSUS.

A.R. 136.

Plaintiff further argues that "nowhere does the HTSUS say that 'prepared fish' and 'fresh and chilled' are mutually exclusive. *Id*. Plaintiff concludes that if CBP relied on industry definitions of "prepared fish" and "fresh and chilled" that were not made available to plaintiff as a basis to deny credit for the question, plaintiff should be awarded credit for the question. *Id*. Plaintiff's answer choice is incorrect and its critique of CBP's rationale for denying credit for Question No. 42 is without support.

For purposes of the HTSUS, fish that has been "prepared" and fish that is "fresh and chilled" are two mutually exclusive categories of imported merchandise that are treated

---

[9] The Government has asked the Court to disregard the new argument presented by plaintiff. In the event, the Court considers the information, we have provided a response to plaintiff's argument.

differently in the HTSUS. "Prepared or preserved fish" is classifiable in heading 1604, HTSUS, and fish "fresh or chilled" is classifiable in 0302, HTSUS. CBP's use of the phrase "prepared fish" in its reasoning was simply a short hand reference for "fish, prepared or preserved" in heading 1604, HTSUS, and it did not rely on any special industry definitions when it denied credit for Question No. 42.

Plaintiff also argues that the question omits material details regarding the extent of the preparation of the fish at issue in Question No. 42 and its refrigeration. Pl.'s Br. at 13. The contents of Question No. 42, however, provide sufficient information to identify the correct answer. The fish is in pieces (segmented) in olive oil and packaged in a glass jar. The fact that the fish is packaged in oil in a glass jar indicates that it is not fresh. Additionally, Question No. 42 does not contain any facts suggesting that the fish "chilled." "Examinees cannot be permitted to reach conclusions by taking a portion of the question and formulating their own factual scenarios." *Stoute-Francois*, 766 F. Supp. 3d at 1325 (*quoting Di Iorio*, 14 Ct. Int'l Trade at 751). Based on the facts provided, answer choice (B) is correct. CBP's decision to deny credit for Question No. 42 was reasonable and supported by substantial evidence.

### Question No. 44

What is the CLASSIFICATION for a 1,080-pixel high-definition digital camera with an interchangeable lens and three-inch liquid crystal display (LCD) that captures both still images and moving images?

    A. 8519.89.3000
    **B. 8525.80.4000**
    C. 8525.80.5015
    D. 8525.80.5050
    E. 8527.12.0000

In scoring the exam, CBP designated the correct answer as (B) "8525.80.4000." A.R. 018, 137. Plaintiff selected answer choice (D), "8525.80.5050." A.R. 042. Pursuant to GRI 1,

the terms of the headings together with any chapter or section notes are paramount. Once the correct heading is identified, the Court then determines which subheading applies to the merchandise at issue. The provisions identified by CBP and plaintiff are as follows:

| | |
|---|---|
| 8525 | Transmission apparatus for radio-broadcasting or television, whether or not incorporating reception apparatus or sound recording or reproducing apparatus; television cameras, digital cameras and video camera recorders: |
| 8525.80 | Television cameras, digital cameras and video camera recorders: |
| | *** |
| 8525.80.40 | Digital still image video cameras |
| | *** |
| 8525.80.50 | Other: |
| 8525.80.5050 | Other |

The parties agree on the proper heading and six-digit classification for the camera as both of their responses (B and D) identify heading 8525, HTSUS. The remaining issue is the correct 10-digit classification. The camera is described as a 1,080-pixel high-definition digital camera with an interchangeable lens and three-inch liquid crystal display (LCD) that captures both still images and *moving images*. Subheading 8525.80.40, HTSUS, covers cameras that have the capability of capturing both still and moving (video) moving images. Answer choice (B) is correct. CBP's decision to deny credit for Question No. 44 is reasonable and is supported by substantial evidence.

Plaintiff argues that the tariff term "Digital still image video camera" in subheading 8525.80.40, HTSUS is "beyond common understanding." Pl.'s Br. 15-16. According to plaintiff a "still image is different from a video. A still image is an image that does not move while a video moves." Plaintiff further argues that "Exam Answer B, might have been the correct

23

classification if it read "Digital still image **and** video cameras." *Id*. at 15.  The conjunction "and" would mean that the digital camera records both still images and video.  But Subheading 8525.80.5050 does not have that conjunction." *Id*. at 17.  Plaintiff argues, further, that the HTSUS does not contain an explanation as to the capabilities of a "Digital still image video camera" of subheading 8525.80.4000, "thus rendering the meaning of the subheading beyond a common understanding." *Id.*  Finally, plaintiff argues that because CBP did not use the term "digital still image video cameras" to describe the cameras in Question No. 44, subheading 8525.80.4000, HTSUS, was automatically disqualified as a correct answer," and therefore, plaintiff's answer must be considered correct or the question must be voided." *Id.* at 16.  Plaintiff's misunderstanding of the tariff term "Digital still image video cameras" does not render Question No. 44 unfair.

Question No. 44 contains ample information to identify the correct answer.  The tariff term "digital still image video cameras" in subheading 8525.80.4000, HTSUS, is clear and unambiguous.  It describes a digital camera that can capture still images **and** record video – which is precisely the camera described in Question No. 44 ("captures both still images and moving images.").  The fact that the HTSUS does not contain a detailed description of the functionality of a "digital still image video camera" does not mean that the term is incomprehensible.  Plaintiff simply failed to properly interpret the tariff term.  Furthermore, CBP is not required to use the precise wording of a statute or regulation in its question.  Therefore there is no deficiency to Question No. 44.  CBP's decision to deny credit for Question No. 44 was reasonable and supported by substantial evidence.

**Question No. 54**

The new owner of a previously recorded trademark would like to continue the recordation with CBP. The trademark is for an item with a gray market counterpart the owner would like protection against based on physical and material differences. The following are all actions the owner must take to continue the recordation EXCEPT:

    A. Pay a fee of $80.00 which covers all trademarks included in the application
    B. State the basis for the asserted physical and material differences with particularity and competent evidence with summaries of the differences for publication in the Customs Bulletin
    **C. The identity of any parent or subsidiary company or other foreign company under common ownership (only for those with aggregate ownership of more than 40% of the business entity) and common control which uses the trademark abroad**
    D. Describe any time limit on the rights of ownership transferred
    E. Submit a status copy of the certificate of registration certified by the U.S. Patent and Trademark Office showing the title to be presently in the new owner's name

In scoring the exam, CBP's designated the correct answer as (C).  A.R. 021, 038.  This answer is consistent with 19 C.F.R. §§ 133.2 and 133.5, which are reproduced below.

**§ 133.2 Application to record trademark.**

An application to record one or more trademarks shall be in writing, addressed to the Intellectual Property Rights (IPR) & Restricted Merchandise Branch, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, NW., Washington, DC 20229, and shall include the following information:

(a) The name, complete business address, and citizenship of the trademark owner or owners (if a partnership, the citizenship of each partner; if an association or corporation the State, country, or other political jurisdiction within which it was organized, incorporated, or created);

(b) The places of manufacture of goods bearing the recorded trademark;

(c) The name and principal business address of each foreign person or business entity authorized or licensed to use the trademark and a statement as to the use authorized; and

(d) The identity of any parent or subsidiary company or other foreign company under common ownership or control which uses the trademark abroad. For this purpose:

(1) *Common ownership* means individual or aggregate ownership of more than 50 percent of the business entity; and

(2) *Common control* means effective control in policy and operations and is not necessarily synonymous with common ownership.

(e) *Lever-rule protection.* For owners of U.S. trademarks who desire protection against gray market articles on the basis of physical and material differences (see *Lever Bros. Co. v. United States,* 981 F.2d 1330 (D.C. Cir. 1993)), a description of any physical and material difference between the specific articles authorized for importation or sale in the United States and those not so authorized. In each instance, owners who assert that physical and material differences exist must state the basis for such a claim with particularity, and must support such assertions by competent evidence and provide summaries of physical and material differences for publication. CBP determination of physical and material differences may include, but is not limited to, considerations of:

(1) The specific composition of both the authorized and gray market product(s) (including chemical composition);

(2) Formulation, product construction, structure, or composite product components, of both the authorized and gray market product;

(3) Performance and/or operational characteristics of both the authorized and gray market product;

(4) Differences resulting from legal or regulatory requirements, certification, etc.;

(5) Other distinguishing and explicitly defined factors that would likely result in consumer deception or confusion as proscribed under applicable law.

(f) CBP will publish in the Customs Bulletin a notice listing any trademark(s) and the specific products for which gray market protection for physically and materially different products has been requested. CBP will examine the request(s) before issuing a determination whether gray market protection is granted. For

parties requesting protection, the application for trademark protection will not take effect until CBP has made and issued this determination. If protection is granted, CBP will publish in the Customs Bulletin a notice that a trademark will receive *Lever*-rule protection with regard to a specific product.

\*      \*      \*      \*

**§ 133.5 Change of ownership of recorded trademark.**
If there is a change in ownership of a recorded trademark and the new owner wishes to continue the recordation with the United States Customs Service, he shall apply therefor by:

(a) Complying with § 133.2;

(b) Describing any time limit on the rights of ownership transferred;

(c) Submitting a status copy of the certificate of registration certified by the U.S. Patent and Trademark Office showing title to be presently in the name of the new owner; and

(d) Paying a fee of $80, which covers all trademarks included in the application which have been previously recorded with the United States Customs Service. A check or money order shall be made payable to the United States Customs Service.

Answer choice (C) is the correct and best answer to Question No. 54 in that the other answer choices **are** actions the new owner is required to take to continue the recordation. Specifically, answer choice (A) corresponds to subsection 132.5(e); answer choice (B) to subsection 133.2(e); answer choice (D) to subsection 133.5(b); and answer choice (E) to subsections 133.7(a).

Plaintiff selected answer choice (B). A.R. 042. This is not correct because answer choice (B) is supported by the regulation. Answer choice (B) corresponds to subsection 133.2(e).

Plaintiff does not provide a basis for his answer choice. Instead, plaintiff argues that Question No. 54 is faulty because its second sentence is poorly drafted. Pl.'s Br. at 22. Not so.

27

The question's second sentence clearly implicates subsection 133.2(e), which governs "Lever-rule protection." The regulation states, in relevant part:

> **§ 133.2 Application to record trademark.**
>
> **Lever-rule protection.** For owners of U.S. trademarks who desire protection against gray market articles on the basis of physical and material differences . . .

19 C.F.R. § 133.2(e). The regulation provides the required action owners must take to receive Lever-rule protection for their trademark, which is set forth in answer choice (B). Consequently, Question No. 54 "reasonably tests 'an applicant's knowledge of customs and related laws, regulations and procedures." *Rudloff*, 19 Ct. Int'l Trade at 1248. And, CBP's decision to deny Mr. Chen credit for his answer to this question was reasonable and supported by substantial evidence.

### Question No. 63

A shipment has arrived on an East coast port with an arrival date of Monday, May 4, 2020, at 11:05AM Eastern Time (ET). The error-free entry summary, with payment, is submitted at the arrival port on Thursday May 7, 2020, at 16:40PM ET. What is the presentation date and time for non-opening moment quota purposes?

> A. Monday, May 4, 2020 – 11:05AM ET
> B. Tuesday, May 5, 2020 – 08:00AM ET
> C. Thursday, May 7, 2020 – 16:40PM ET
> **D. Friday, May, 8, 2020 – 08:30AM ET**
> E. Friday, May, 8, 2020 – 09:00AM ET

In scoring the exam, CBP's designated the correct answer as (D). A.R. 026, 038.

Plaintiff selected answer choice (B). A.R. 042. Answer choice (D) is consistent with 19 C.F.R. § 132, which states:

> An entry summary for consumption or a withdrawal for consumption for quota-class merchandise shall be presented only during official office hours, except as provided in § 132.12 [special procedures for opening moment quotas] and 141.62(b) of this chapter. For purposes of administering quotas, "official office

hours" shall mean 8:30 a.m. to 4:30 p.m. in all time zones.

It is also supported by 19 C.F.R. § 141.62, which states:

**§ 141.62 Place and time of filing.**

**(a)** *Place.* An application for immediate delivery and entry, entry summary, or withdrawal documentation shall be filed at the customhouse or at any other Customs location approved by the director of the port where the merchandise is to be or has been released.

**(b)** *Time*—(1) *Normal business hours.*
**(i)** Except as provided in paragraph (b)(2) of this section, an application for immediate delivery or entry documentation shall be filed when the customhouse is open for the general transaction of business, or when Customs has established a regular tour of duty in accordance with § 101.6(f) of this chapter.
**(ii)** Except as provided in paragraph (b)(2) of this section, entry summary or withdrawal documentation shall be filed when the customhouse is open for the general transaction of business, as provided in § 101.6 of this chapter.

**(2)** *Overtime services*—(i) *Generally.* Except as provided in paragraph (b)(2)(ii) of this section, an application for immediate delivery or entry documentation may be filed when the customhouse is not open for the general transaction of Customs business and no regular tour of duty has been established; and entry summary or withdrawal documentation may be filed when the customhouse is not open for the general transaction of business, if:

**(A)** The person desiring to transact business has applied for and received authorization for overtime services on a reimbursable basis, as provided for in § 24.16 of this chapter, and

**(B)** Overtime services of Customs officers are available.

**(ii)** *Quota-class merchandise.* Overtime shall not be authorized for the presentation of entry summary documentation which serves as both the entry and entry summary or withdrawal documentation, for quota-class merchandise without Headquarters authorization. If Headquarters authorization is granted, the time of delivery of the entry summary or withdrawal documentation, with the estimated duties attached, or without the estimated duties attached, if the entry/entry summary information and a scheduled statement date have been successfully received by Customs via the Automated Broker Interface, shall be the time of presentation for quota purposes. However, if an entry summary or

29

withdrawal for quota-class merchandise is delivered inadvertently during
overtime hours without Headquarters authorization, the time
of presentation for quota purposes shall be the opening of business on the
next business day.

In Question No. 63, the entry summary and payment were submitted on May 7, 2020, at
16:40PM ET, after general business hours.  *See* 19 C.F.R. § 132.  Friday, May 8, 2020, 8:30 a.m.
ET was the "opening of business on the next business day" as provided in 19 C.F.R. §
141.62(b)(2)(ii).  CBP's decision to deny plaintiff credit for this question was reasonable and
supported by substantial evidence.

Plaintiff does not explain the basis of its answer choice.  Instead, plaintiff argues, for the
first time, that Question No. 63 is missing crucial information that is necessary to identify the
correct answer.[10]  Specifically, according to plaintiff, the question did not state whether overtime
services were authorized by Headquarters.  Pl.'s Br. at 22-23.  Plaintiff then concludes that, "[i]f
overtime services had been authorized, answer C is correct."  *Id.*

Plaintiff's analysis is not correct.  As a preliminary matter, plaintiff did not select answer
choice (C), which in any event, is an incorrect answer.

Second, Question No. 63 did not contain any information regarding the approval of
overtime.  As such, plaintiff cannot reach a conclusion based on his own assumptions or
conjecture.  "It is incumbent upon the test-taker synthesize the fact pattern provided while
referencing the universe of information on which he or she is to base a decision."  *Stoute-
Francois*, 766 F. Supp. 3d at 1322 (*quoting Dunn Heiser v. United States*, 374 F. Supp. 2d 1276,
1282-83 (Ct. Int'l Trade 2005).  "A question will still meet the substantial evidence test even if it

---

[10] The Government has asked the Court to disregard the new argument presented by
plaintiff.  In the event, the Court considers the information, we have provided a response to
plaintiff's argument.

does not explicitly state that no possible exception or special rule will apply." *Id.* Assumptions "to include possibilities beyond what 'the pattern provided' cannot be reasonably found to be the best answer." *Id.* (*quoting Depersia v. United States*, 637 F. Supp. 2d 1244, 1252 (Ct. Int'l Trade 2009)).

Here, CBP's denial of credit for Question No. 63 was reasonable and supported by substantial evidence.

### Question No. 78

Under which scenario can a broker bill a freight forwarder (FF) for Customs duties without sending a copy to the importer?

- A. The broker obtains a Sub-Power of Attorney (POA) from the FF, on behalf of the importer, and a valid POA from the importer.
- B. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions.
- C. The importer is told in advance the name of the FF selected by the broker to handle their Customs transactions and the broker transmits directly to the FF, a true copy of the brokerage charges for the fees and charges collected by or through the forwarder.
- D. The broker is provided a POA from the FF, on behalf of the importer, to handle the importer's Customs transactions.
- **E. The broker is provided the importer's signed waiver of the requirement to receive a true copy of the broker charges, when fees and charges are to be collected by or through the FF, and the importer is told in advance the name of the broker selected by the FF to handle their Customs transactions.**

In scoring the exam, CBP designated the correct answer as (E). A.R. 035, 039. This answer is consistent with 19 C.F.R. § 111.36(a), which states:

> When a broker is employed for the transaction of customs business by an unlicensed person who is not the actual importer, the broker must transmit to the actual importer either a copy of his bill for services rendered or a copy of the entry, unless the merchandise was purchased on a delivered duty-paid basis or unless the importer has in writing waived transmittal of the copy of the entry or bill for services rendered.

Section 111.36(a) provides two exceptions under which a broker is not required to transmit a copy of the bill for services rendered: (1) the merchandise must have been purchased on a delivered duty-paid bases or (2) the importer has in writing waived transmittal of the copy of the entry or bill for services rendered.  Answer choice (E) reflects the second exception.

Plaintiff selected answer choice (D).  A.R. 042.  In challenging the results, plaintiff argues for the first time that Question No. 78 is unintelligible because a broker cannot bill a freight forwarder for Customs duties.[11]  Plaintiff further argues that only CBP bills importers for Customs duties.  Pl.'s Br. at 25.  Plaintiff is conflating the issuance of a bill by CBP as opposed to the issuance of a bill by a licensed customs broker.  CBP issues a bill detailing the final computation of duties, taxes, and fees owed for a particular entry, as determined at liquidation.  Pursuant to 19 C.F.R. § 24.3(a), such a bill must be issued "by an authorized Customs officer or employee on an official form."  However, this requirement, pertaining to the issuance of a bill upon liquidation of an entry, is not relevant to Question No. 78.  The call of Question No. 78 is to identify in what circumstances a licensed customs broker may send a bill for customs business conducted on behalf of an importer to a freight forwarder, rather than directly to an importer.  Such customs business may include tendering the estimated duties, taxes, and fees owed to CBP on behalf of the importer.  *See* 19 C.F.R. § 111.1 (defining "customs business" as including "payment of duties, taxes, or other charges assessed or collected by CBP on merchandise by reason of its importation") (quoting 19 U.S.C. § 1641(a)(2)).

Pursuant to 19 C.F.R. § 111.36(a), if a broker is employed to transact customs business "by an unlicensed person who is not the actual importer, the broker must transmit to the actual

---

[11] The Government has asked the Court to disregard the new argument presented by plaintiff.  In the event, the Court considers the information, we have provided a response to plaintiff's argument.

importer either a copy of his bill for services rendered or a copy of the entry" unless one of two exceptions applies.  Additionally, pursuant to 19 C.F.R. § 111.36(c)(2)(i), if a licensed customs broker compensates a freight forwarder for referring an importer, the broker must transit a "true copy of his brokerage charges if the fees and charges are to be collected by or through the forwarder." Accordingly, the call of Question 78 concerns the requirements for issuing a bill to an importer for services rendered by a licensed customs broker, not a bill issued by CBP for outstanding duties, taxes, and fees.  *See, e.g.,* Headquarters Ruling Letter (HQ) H318461 (Aug. 25, 2002) (citing to 19 C.F.R. § 111.36(c) in discussing the requirements for invoicing an importer when the invoice includes the sum of duties paid to CBP on the importer's behalf); H258556 (Sept. 6, 2017) (discussing the requirements for a broker to transmit duties on behalf of an importer when a freight forwarder is involved).  Plaintiff's argument regarding the requirements for CBP to issue a bill thus has no bearing on Question No. 78.  CBP's decision to deny credit for Question No. 78 was reasonable and supported by substantial evidence.

In conclusion, CBP's decision to deny plaintiff credit for the questions Nos. 14, 29, 36, 38, 39, 42, 44, 54, 63 and 78 is supported by substantial evidence.  On this basis, plaintiff did not attain a passing score of 75% or higher on the April 2022 exam and, consequently, that CBP's decision not to grant plaintiff a license due to his failure to attain a passing score is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## CONCLUSION

For all of the above reasons, the Government respectfully requests this Court to deny

plaintiff's motion for judgment on the agency record, enter judgment for the United States, and dismiss this action.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-1873
DATED: July 18, 2025                 Attorneys for Defendant

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HON. JANE A. RESTANI, JUDGE

_____
BRANDON CHEN,                                                :
                                        Plaintiff,             :          Court No.  24-00208
                                                               :
                          v.                                    :
                                                               :
UNITED STATES OF AMERICA,                               :
U.S. CUSTOMS AND BORDER PROTECTION,  :
                                                               :
                             Defendants.                       :
_____   :


## CERTIFICATE OF COMPLIANCE

The brief complies with the 14,000 word limitation imposed by Chambers Procedures.

The word count is 10,112.

                                        Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General

                                        PATRICIA M. McCARTHY
                                        Director

                                        /s/ Justin R. Miller
                                        JUSTIN R. MILLER
                                        Attorney-In-Charge
                                        International Trade Field Office

                                        /s/ Marcella Powell
                                        MARCELLA POWELL
                                        Senior Trial Counsel
                                        Department of Justice, Civil Division
                                        Commercial Litigation Branch
                                        26 Federal Plaza – Suite 346
                                        New York, New York 10278
                                        (212) 264-1873
DATED: July 18, 2025               Attorneys for Defendant